504 A.2d 285

The TRIDENT CORPORATION

v.

RELIANCE INSURANCE COMPANY, the
Simkiss Agency, Inc.

Appeal of RELIANCE INSURANCE COMPANY.

The TRIDENT CORPORATION, Appellant

v.

RELIANCE INSURANCE COMPANY and the
Simkiss Agency, Inc.

Superior Court of Pennsylvania.

Argued Oct. 31, 1985.

Filed Jan. 28, 1986.

Jon A. Baughman, Philadelphia, for Reliance, appellant in No. 712 and appellee in No. 713.

Gregory M. Harvey and Richard W. Hopkins, Philadelphia, for Trident, appellant in No. 713 and appellee in No. 712.

Before CAVANAUGH, McEWEN and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the Order of the Court of Common Pleas of Philadelphia County denying appellant Trident Corporation's (Trident) Motion for a New Trial, denying appellee, Reliance Insurance Company (Reliance), its cross-appeal Motion for Judgment Notwithstanding the Verdict and to Conform Judgment, and granting appellee, Simkiss Agency, Inc. (Simkiss), its Motion for Judgment Notwithstanding the Verdict. The order appealed from entered judgment in favor of Trident Corporation against Reliance Insurance Company for $177,518.48.

This action was brought in contract and tort[1] by the Trident Corporation a construction company, against Reliance, an insurance and surety company, Simkiss, an insurance and bonding broker, and John A. Simkiss, Jr.[2], the President of Simkiss Agency.

Trident's principal source of business was governmental contracts. To secure a government contract, a contractor is required to submit, with its bid, a bid bond issued by a qualified surety or insurance company. A bid bond guarantees that if the contractor is the lowest responsible bidder on a particular contract the contractor will accept the government's offer to perform in accordance with the contract. The bond provides that the surety will pay set damages in the event the contractor does not accept the offer. When Trident sought to establish a relationship with a bonding company, it engaged the services of Simkiss, the insurance and bonding broker. Simkiss sought and secured bid and performance bonds for Trident from Reliance, the insurance company.

Trident alleged that Simkiss breached its duty to use its "best efforts" to provide Trident with its bonding requirements. This claim was based on Trident's "broker of record" letter to Simkiss by which Trident gave Simkiss all of its insurance business. Trident also asserted that once Simkiss had obtained Reliance as the surety for Trident, Reliance wrongfully failed to issue a number of bid and/or performance bonds requested by Trident. Finally, Trident alleged that Simkiss and/or Reliance wrongfully rescinded a bid bond which had been issued to Trident on the Willow Grove project, allegedly causing Trident to lose the contract. The defendants denied all of these charges.

Although Trident was awarded $177,518.40, Trident raises two multi-faceted questions on appeal. The first is

1. The tort claims originally brought by appellant were not raised either in Trident's motion for a new trial below or in its appellate brief, and are not before this court on appeal.
2. All claims against Mr. Simkiss were dismissed below and he is not a party to this appeal.

whether the lower court erred in determining that Trident presented insufficient evidence to allow all except one of its contractual claims to go to the jury.

■ The lower court disallowed Trident's claim against Simkiss on the ground that Trident never properly asserted in its complaint or amended complaint that Simkiss breached its duty to use "best efforts". We agree and, therefore, that issue is not properly before us. *See* Pa.R.A.P. 302.

The trial court also ruled that Trident failed to present sufficient evidence to support its claim that Reliance breached a written contract, as orally modified, by failing to issue requested bid bonds on many occasions.[3] The only evidence submitted by Trident to prove the existence of an orally modified contract was a letter written by Reliance to Trident and a subsequent conversation. The letter, as relevant, reads:

> Allow this letter to serve as your bonding line of credit of $400,000.00 for a single job size and $1,800,000.00 for a total work program.
>
> This line is contingent upon the following conditions:
> 1. As a whole the work in progress as revealed by quarterly work in progress schedules remains profitable.
> 2. All bills, except those under dispute, are paid with [sic] 30 days.
>
> This line may be revised when the Nicetown job is much further along towards completion.

The president of Trident, Mr. Pospolyta, was dissatisfied with the $400,000.00 limit and protested it to an officer of Reliance Mr. Witnaur. Pospolyta testified that Witnaur responded, "Don't worry about it. If you're going to bid a job that is more than $400,000.00, we will deal with it on an individual basis." According to Pospolyta, at another meeting with Mr. Witnaur, Pospolyta wanted clarification as to whether Reliance would be responsible for jobs larger than

---

3. We note that in 1975 alone, Trident requested at least thirty-five (35) bid bonds, and Reliance granted at least ten (10) of those requests.

$400,000.00. At trial Pospolyta testified, "Mr. Witnaur said that he will look into it and, you know, resolve it."

■ Trident claims that the letter constituted a contract, as orally modified removing the $400,000.00 limitation, which required Reliance to grant Trident bid bonds on four specific projects: the Meadow Gardens Project involving a bid of $1,064,864.00; the Widener College project involving a bid of $1,033,300.00; the Wistar II job, a contract of approximately $1,200,000.00; and the Willow Grove project, discussed more fully herein. While it is accurate to state, as appellant repeatedly asserts, that whether a written contract has been modified is a question to be decided by the jury, there must be some evidence on which the jury may base its decision. We agree with the trial court's conclusion that there was not sufficient evidence to raise a jury question on this point. In Pennsylvania, the rule is clear that an "oral contract which modifies or changes or cancels a prior written contract must be proved by evidence which is clear, precise and convincing." *Pellegrene v. Luther,* 403 Pa. 212, 216, 169 A.2d 298, 300 (1961); *accord Hamilton Bank v. Rulnick*, 327 Pa.Superior Ct. 133, 475 A.2d 134 (1984). Assuming that the previously mentioned letter did create a contract between Trident and Reliance, Pospolyta's testimony was inadequate as a matter of law to modify its terms.

Trident states its second issue as follows: "With regard to the issue that the trial court did submit to the jury, is plaintiff [Trident] entitled to judgment against both defendants [Simkiss and Reliance] where plaintiff presented evidence that each defendant breached its own contract with plaintiff thereby causing plaintiff damage and the jury's findings supported liability?"

The trial court found that Trident had produced sufficient evidence to allow one contract claim to go to the jury. That claim involved a bid bond allegedly issued to Trident, and then rescinded, for the Willow Grove job, a project of the United States Navy. The jury answered the following special interrogatories on this claim.

(1) Did Simkiss agree to and issue the bid bond in the amount of at least $1,137,939.00 to Trident in the Willow Grove job after Trident had applied for such a bond?

Answer: Yes

(2) If your answer to the foregoing interrogatory is yes, how much money, if any, did Trident lose in the Willow Grove job alone as a result of not being able to file that bid?

Answer: $177,518.48

(3) If your answer to the first interrogatory is yes, how much money, if any, did Trident lose, over and above the profit on the Willow Grove job as the result of not being able to file that bid?

Answer: $0

(4) Did Reliance itself, as opposed to Simkiss, approve the rescission of this bid bond on October 17, 1974?

Answer: No

The lower court entered judgment in favor of Trident against both defendants. It later granted Simkiss' motion for judgment n.o.v. and imposed judgment against Reliance only on the theory that Simkiss was acting as the agent for a disclosed principal (Reliance) in both the issuance and rescission of the bond. Following the Restatement (Second) of Agency (1958), § 320, the lower court held that Simkiss was not a party to the contract and, therefore, was not liable to Trident for any loss suffered by the breach of the contract.

The resolution of the issue raised by Trident depends on whether the lower court was correct in its conclusion that Simkiss was, as a matter of law, acting as an agent, with apparent or actual authority, for Reliance in both the issuance and rescission of the bond. The result we reach on this issue is also pivotal to an issue raised by Reliance in its cross-appeal. Reliance claims that Simkiss lacked the actual or apparent authority to issue or rescind the Willow Grove bid bond on behalf of Reliance and, therefore, Reliance had no liability under the contract.

We find no merit to Reliance's claims that Simkiss had no authority to issue a bid bond for the Willow Grove project. The lower court found that, as a matter of law, Simkiss had apparent authority to issue and rescind the bond and, thus, as to Trident, Reliance must be held responsible. The lower court cited section 8, Restatement, Second, of Agency, in support of its conclusion. That section reads:

> Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.

See *Sauers v. Pancoast Personnel, Inc.,* 294 Pa.Superior Ct. 306, 309, 439 A.2d 1214, 1215 (1982)("Apparent authority exists when the principal has led a third party into believing that the licensee was the principal's agent.") Upon review of the record, pleadings, and evidence of the course of conduct in this case, we affirm the lower court's conclusion that Simkiss had apparent authority to issue and rescind the bid bond.

Reliance and Simkiss had an agency agreement which gave Simkiss the authority to enter and rescind bond agreements, subject to certain limitations. Simkiss acted as Reliance's agent for all bonds provided to Trident. In fact, Reliance admitted, in its trial brief, that Simkiss acted as agent for Reliance in actually executing the bonds. In its answer to the complaint, Reliance averred that Simkiss was not a general agent, but an agent only for those purposes set forth in the agency agreement—which included both the execution and rescission of bonds under certain conditions.[4]

An admitted agent is presumed to be acting within the scope of his authority where the act is legal and the

---

4. We are not here concluding that Simkiss acted within the scope of its actual authority, as granted by Reliance, in its execution and rescission of the Willow Grove bond. We are merely showing that Simkiss had actual authority to act for Reliance and that it would not be unreasonable for Trident to assume that, based on the exercise of its actual authority, Simkiss had the apparent authority to execute and later rescind the Willow Grove bid.

third party has no notice of the agent's limitation. *Continental-Wirt Electron Corp. v. Sprague Electric Co.*, 329 F.Supp. 959, 963 (E.D.Pa.1971). A third party is entitled to rely upon the apparent authority of the agent when this is a reasonable interpretation of the manifestations of the principal. *Turnway Corp. v. Soffer*, 461 Pa. 447, 458, 336 A.2d 871 (1975); *Industrial Molded Plastic Products, Inc. v. J. Gross & Son, Inc.*, 263 Pa.Superior Ct. 515, 521, 398 A.2d 695 (1979).

■ Here, the course of dealing among the three parties was such that it was reasonable for Trident to believe that a bid bond issued by Simkiss, with a power of attorney attached, was evidence of actual approval by Reliance of that bond. Prior to the actual authorization of the bid bond for the Willow Grove contract, in excess of $1.1 million, Reliance had authorized the execution of a bid bond for $800,000.00, apparently after a check of Trident's current financial situation, as was standard procedure for requests over $400,000.00. We can only conclude from this that Trident had submitted all the required paperwork and that it reasonably believed that Simkiss had the authority to issue the higher bond.

■ Appellant Reliance next claims that, even if Simkiss had the authority to issue the bond, it lacked the authority to rescind the Willow Grove bid bond and that Trident unreasonably relied on that rescission. Again, we find that Simkiss did have actual authority to rescind bid bonds, upon special authorization, and that it likewise had apparent authority to so act. While the record may contain no evidence of special authorization to cancel the bond, it was not unreasonable for Trident to accept the Simkiss rescission. All parties agreed that the general course of conduct was for all communications between Trident and Reliance to flow through Simkiss. It is axiomatic that the party who asserts that an agent has power to act on behalf of his principal bears the burden of proving it. *Hartley v. United Mine Workers of America*, 381 Pa. 430, 113 A.2d 239 (1955). Trident has clearly met this burden of proof.

We affirm the lower court's finding that Simkiss was an agent, acting for a disclosed principal, Reliance, when it issued and rescinded the Willow Grove bid bond. Thus, we find no merit to Trident's claim that the lower court erred in imposing judgment against Reliance only. Further, we find no merit to Reliance's claim that the lower court erred in determining that, as a matter of law, Simkiss acted as an agent with apparent authority to issue and rescind the Willow Grove bid bond.

Reliance next claims that it is entitled to judgment n.o.v. because the bond in question had never been delivered to the obligee (the United States Navy) and, as a matter of law, such bonds are ineffective and fully revocable until delivery and acceptance by the obligee. Reliance relies on *Silberblatt v. Seaboard Surety Co.*, 417 F.2d 1043 (8th Cir.1969), in support of this proposition. *Silberblatt* cites 72 C.J.S. *Principal and Surety* §§ 57 and 60 (1955). Section 57 reads:

> In order that a surety may be bound, the suretyship bond or obligation must be duly accepted by the creditor or obligee within a reasonable time.

Section 60 reads:

> A surety has the right to revoke the suretyship before the obligation is delivered and accepted.

The reasoning in *Silberblatt* is not apposite to the case at hand because the plaintiff therein was the obligee. In the case *sub judice*, the plaintiff, Trident, is the principal and a different analysis of the facts is necessary.

A suretyship is a three-party relationship in which the surety undertakes to perform to the obligee only if the principal fails to do so. 35 P.L.E. *Suretyship* § 3 (1961). The contract of suretyship is between the principal debtor and the surety, *First National Bank & Trust Co. of Ford City v. Stolar*, 130 Pa.Superior Ct. 480, 197 A. 499 (1938), and it is generally essential to the formation of a suretyship contract that the principal manifest an acceptance of the surety's offer. *See* 35 P.L.E. *Suretyship* § 21. *See also* 72 C.J.S. *Surety and Principal* § 29:

Generally, *as between the principal and surety,* it is essential to the existence of a suretyship relation that the surety become such *at the request, or with the assent, of the principal,* or that the principal have notice of, and accept, the surety's offer to assume the relationship. (emphasis added)

Acceptance of an offer to act as surety need not be made in a formal manner, but may be implied from the fact that the offer was acted upon. *See State Camp of Pennsylvania of Patriotic Order, Sons of America v. Kelley,* 267 Pa. 49, 110 A. 339 (1920); 35 P.L.E. *Suretyship* § 28.

In this case, there is no doubt that Trident both requested and accepted the bid bond offered by Reliance through its agent Simkiss. Upon being notified that the bid bond was available, Trident immediately picked it up and prepared its final bid for presentation to the United States Navy.

 The sections of Corpus Juris Secundum cited in *Silberblatt* come into play if the obligee seeks to enforce the suretyship. Although the suretyship contract is formed at the time the surety's offer is accepted by the principal, it may not be enforced by the obligee against the surety unless accepted by the intended obligee within a reasonable time. Such a provision is for the protection of the surety inasmuch as such notice enables the surety to know the nature and extent of its liability. *See Acme Manufacturing Co. v. Reed,* 197 Pa. 359, 47 A. 205 (1900). In fact, the bid bond in question specifically provided that the suretyship obligation (between Trident and Reliance) would not be impaired by any extension(s) of time for acceptance of the bid granted to the obligee by the principal up to sixty (60) days beyond the time originally allowed for acceptance of the bid. We find that this scenario of events sufficiently establishes that a contract was formed between Trident and Reliance which Reliance then rescinded to Trident's detriment. Accordingly, Trident properly brought a cause of action in contract and the lower court did not err in denying Reliance's request for judgment n.o.v.

■ Finally, Reliance claims that the contract must fail for lack of consideration. This argument is totally frivolous. The uncontradicted testimony was that insurance companies (sureties) do not assess against their construction contractor clients a specific charge for each bid bond which such a client is authorized to file. The premiums paid to the insurance company are derived from a charge on each performance bond issued following the award of the contract when the principal is the lowest bidder. Reliance does not deny that this was the general course of conduct followed by the parties to this case or in the industry in general. We find no merit to Reliance's argument.

Accordingly, the judgment of the court below is hereby affirmed.