525 A.2d 1215

**Robert C. BOLUS, Key Brockway, Inc., t/a Key Freightliner and D.B. & B. Realty Co., Inc.**

**v.**

**UNITED PENN BANK and Emmanuel Ziobro, Appellants.**

**Robert C. BOLUS, Key Brockway, Inc., t/a Key Freightliner and D.B. & B. Co., Inc., Appellants,**

**v.**

**UNITED PENN BANK and Emmanuel Ziobro.**

Superior Court of Pennsylvania.

Argued Sept. 4, 1986.

Filed March 5, 1987.

Reargument Denied May 18, 1987.

General lacked the authority to prosecute the case, we see no alternative but to vacate the judgment of sentence.

254

Michael J. Donohaue, Scranton, for appellants in No. 1076 and appellees in No. 1142.

Arthur L. Piccone, Wilkes Barre, and Michael H. Roth, Scranton, for appellants in No. 1142 and appellees in No. 1076.

Before WICKERSHAM, HOFFMAN and BECK, JJ.

BECK, Judge:

This appeal and cross-appeal arise from a jury verdict against defendant-appellant United Penn Bank (the "Bank") and for plaintiffs-appellees Robert C. Bolus, Key Brockway, Inc., t/a Key Freightliner and D.B. & B. Realty Co., Inc. ("Bolus") in the amount of $375,000. Bolus cross-appeals. We affirm but remand for a hearing on the delay damages issue only in accordance with *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986).

The factual and procedural context of this case can be briefly summarized. Since 1970, Robert Bolus had been engaged in various trucking businesses. He sold trucks and parts for trucks, repaired trucks and towed trucks. In connection with these businesses, Bolus formed two corporations, Key Brockway, Inc. and D.B. & B. Realty Co., Inc.,

both of which were also plaintiffs below. In 1976, Bolus decided to expand his businesses by building a truck repair facility on a tract of land in Bartonsville, Pennsylvania (the "Bartonsville project"). Bolus contacted the Bank to obtain financing for the project.

Bolus was referred to Emmanuel Ziobro, co-defendant below and an Assistant Vice-President of the Bank. Ziobro orally agreed that the Bank would provide the funding for the Bartonsville project. Bolus contended at trial that Ziobro assured him that the Bank would fund the purchase of the land, construction of the facility, equipment and inventory. In September 1976, the Bank lent Bolus One Hundred Thirty-Five Thousand Dollars ($135,000) and Bolus purchased the Bartonsville property and began construction.

In January 1977, Bolus lost a truck dealership he was operating at a different location. He arranged to replace that dealership with another from Freightliner Corporation. Bolus alleges that he informed Ziobro of this fact and on Ziobro's "direction" returned to Freightliner to obtain an additional dealership to be conducted at the Bartonsville location, which Bolus obtained. The acquisition of the additional dealership markedly changed Bolus' plans as to the scope of the Bartonsville project. He needed additional parts and equipment as a condition of conducting the dealership. The total cost of these additional requirements was in excess of One Hundred Thousand Dollars ($100,000). Bolus approached the Bank for the additional funds and the Bank refused to provide them. However, shortly thereafter, the Bank did lend Bolus an additional Seventy-Five Thousand Dollars ($75,000) to fund construction cost overruns at the Bartonsville project.

Bolus' businesses began to collapse in 1978. He eventually lost both truck dealerships and fell behind in his payments to the Bank. The Bank confessed judgment against Bolus in the amount of Five Hundred Thousand Dollars ($500,000), the amount of a Small Business Administration guaranteed loan from the Bank to Bolus, and seized the

proceeds of an auction salvage sale Bolus had conducted at another of his business locations. The Bank applied these funds to satisfy Bolus' debt to the Bank as well as certain of his debts to others. Finally, Bolus was forced to sell his properties where he had formerly conducted the two dealerships and the proceeds of those sales were applied to satisfy the Bank's loans.

On April 3, 1980, Bolus and his two corporations instituted this action in trespass and assumpsit against the Bank and Ziobro. Bolus alleged the Bank had breached an oral contract to fund the Bartonsville project, had negligently misrepresented that it would fund the project, and was guilty of the torts of conversion and tortious interference with a contract. The latter two causes of action were terminated by the entry of a compulsory nonsuit against Bolus at the close of Bolus' case. Bolus has not appealed the nonsuit.

A jury trial of the remaining causes of action commenced on October 29, 1984 and ended on November 5, 1984. The jury returned a verdict in favor of all plaintiffs and against the Bank alone in the amount of $375,000. The Bank filed a timely Motion for Post-Trial Relief seeking judgment N.O.V. or, in the alternative, a new trial. The Motion was denied and the trial court molded the verdict to add delay damages pursuant to Pa.R.C.P. 238 on February 25, 1986. Judgment was entered on March 25, 1986.

We can summarily dispose of Bolus' cross-appeal. The sole ground of the cross-appeal is that the trial court erred in refusing to dismiss the Bank's Motion for Post Trial Relief on the ground that the Bank violated Lackawanna County Rule of Procedure 211(h) by failing to file a timely brief in support of the Motion.

First, we note that the cross-appeal was timely filed. Pennsylvania Rule of Appellate Procedure 903, relating to the time for filing appeals, states:

(b) Except as otherwise prescribed in Subdivision (c) of this rule, if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days

of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.

Pa.R.A.P. 903(b). Since the Bank here did not file its appeal in this matter until April 14, 1986, Bolus had at least until April 28, 1986 to file its cross-appeal. The docket reveals that Bolus' Notice of Appeal was filed on April 17, 1986. Thus, the Bank's argument that Bolus' appeal is untimely is clearly without merit in that it takes no cognizance of the expansion of time for filing cross-appeals provided in Rule 903(b).

■ However, the Bank does have a meritorious response to the substantive ground of the cross-appeal. As we have noted, the sole contention Bolus raises is that the Bank's post-trial motion should have been dismissed by the trial court because the Bank failed to file its brief in support of that motion within the briefing schedule set by the trial court. In support of this argument, Bolus cites us to Lackawanna County Rule of Procedure 211, concerning argument and briefing before the Lackawanna Court of Common Pleas. Sections (g) and (h) of Rule 211 provide that the trial court may establish a briefing schedule and that if it does so and the moving party fails to file a timely brief, "... the matter may be dismissed by the court as a matter of course." Lackawanna Co. R.P. No. 211(g), (h).

In this case, there is no dispute that the Bank's brief was untimely. However, we do not agree that the trial court was therefore mandated by the provisions of Rule 211 to dismiss the Bank's post-trial motion. Rule 211 says the matter *may* be dismissed by the court, but not that it shall be. Rule 211 vests discretion in the trial court and that court's discretion was not abused under these circumstances. Although the Bank's brief was late filed, it was filed prior to oral argument and Bolus was, therefore, able to review it prior to argument. Moreover, Bolus has not argued to us that it suffered any specific prejudice as a result of the Bank's untimely brief.

■ Thus, we affirm the trial court's order denying Bolus' motion to dismiss the Bank's post-trial motion. In doing so, however, we do not sanction the Bank's failure to comply with the local rules of the Lackawanna Court. As we have so frequently stated in the past, rules of court are absolutely necessary to the efficient operation of the judicial system and noncompliance therewith is to be condemned. *Straff v. Nationwide Mutual Fire Insur. Co.,* 230 Pa.Super. 403, 326 A.2d 586 (1974). We simply hold that in this case, we will not interfere with the trial court's exercise of the discretion the rule in question grants.

We now turn to a consideration of the issues raised in the Bank's appeal, which consist in six allegations of error that the Bank contends mandate the grant of a new trial. In reviewing these issues, we will not reverse the trial court's denial of a new trial unless we find that the trial court's denial constituted an abuse of discretion or was based upon an error of law. *Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807 (1984).

The Bank's allegations of error are as follows:

(a) The evidence adduced at trial failed to establish an agency relationship between co-defendant Emmanuel Ziobro and the Bank;

(b) The jury's verdict finding only the Bank liable and exonerating Ziobro of liability is inconsistent in that the Bank cannot be liable for a tort based upon the actions of its servant under the doctrine of respondeat superior unless the servant is also found liable for the tort;

(c) The trial court erred in not instructing the jury that a compulsory nonsuit had been entered against the plaintiffs on their conversion and tortious interference with a contract. causes of action;

(d) The jury's award of future and past profits damages was based upon speculation;

(e) The testimony of plaintiffs' expert on future and past profits damages was inadmissible; and

(f) The delay damages award was erroneous.

Since we find no merit in any of the Bank's contentions on appeal, we affirm.

## 1. *Agency of Ziobro*

First, the Bank argues that there was no evidence to show that Ziobro had express, implied or apparent authority to bind the Bank to a lending commitment of the size Bolus alleged that Ziobro made to Bolus on behalf of the Bank. The Bank points to the fact that there was testimony that Ziobro had express authority only to make $5,000 unsecured and $10,000 secured loans. The Bank, therefore, argues that since there was no evidence that Ziobro was acting as the Bank's agent, the Bank cannot be liable either in contract or tort. The Bank draws this conclusion because absent a showing of Ziobro's agency, the evidence of Ziobro's acts is inadmissible against the Bank and without that evidence, the Bank contends that it cannot possibly be held liable. The Bank thus seeks a new trial because the verdict was against the weight of the evidence.

■ In reviewing a denial of a new trial where the appellant argues that the verdict was against the weight of the evidence, we must award a new trial only where the verdict is so contrary to the evidence as to shock this Court's sense of justice. *Macina v. McAdams,* 280 Pa.Super. 115, 421 A.2d 432 (1980). In this case, our review demonstrates that the evidence was clearly sufficient to support a finding of Ziobro's agency relationship with the Bank and that as such, Ziobro was clothed with at least apparent authority to bind the Bank to the transactions with Bolus.

■ It is true as the Bank urges that Bolus had the burden of proving an agency relationship before Ziobro's actions could be attributed to and binding on the Bank. *Girard Trust Bank v. Sweeney,* 426 Pa. 324, 231 A.2d 407 (1967). Whether an agency relationship exists is a question of fact for the jury. *Levy v. First Pennsylvania Bank N.A.,* 338 Pa.Super. 73, 487 A.2d 857 (1985); *Breslin by Breslin v. Ridarelli,* 308 Pa.Super. 179, 454 A.2d 80 (1982). There are four grounds upon which a jury can conclude that

an agency relationship exists and that the principal is bound by a particular act of the agent and liable to third parties on the basis thereof. The jury may find that the alleged agent had

1) express authority directly granted by the principal to bind the principal as to certain matters; or

2) implied authority to bind the principal to those acts of the agent that are necessary, proper and usual in the exercise of the agent's express authority; or

3) apparent authority, i.e. authority that the principal has by words or conduct held the alleged agent out as having; or

4) authority that the principal is estopped to deny.

*SEI Corp. v. Norton & Co.*, 631 F.Supp. 497 (E.D.Pa.1986).

■ As the trial court has indicated in its thorough opinion, further refinements of the foregoing rule indicate that in this case, the jury could have found that Ziobro had at least apparent authority to commit the Bank to a financing obligation of the type that Ziobro made to Bolus.

Without reviewing the evidence in its entirety, we point out that it clearly established that Ziobro was employed as an officer of the Bank authorized to make loans. Although there was testimony that his individual lending authority was limited in amount, there was no evidence that this fact was communicated to Bolus or that Bolus should have concluded that Ziobro's authority was limited. In addition, certain facts of record indicate that one other employee of the Bank himself apparently thought that Ziobro was in charge of all commercial lending at the Bank. When Bolus initially contacted the Bank for financing on the Bartonsville project, this employee told Bolus to speak to Ziobro because he was in charge of commercial lending.

Thus, the Bank itself held Ziobro out to Bolus as being clothed with authority to commit the Bank to provide whatever financing Ziobro reasonably determined to be appropriate under the circumstances. In fact, Ziobro was the only person at the Bank Bolus was ever required directly to deal

with to obtain financing commitments for the project. Moreover, Ziobro told Bolus that although there was a loan committee at the Bank that would have to approve the loans, they would basically "rubber stamp" Ziobro's own recommendation and approval and this proved to be true. Since in determining the apparent authority of an agent we must look to the actions of the principal, not the agent, we decide that the foregoing adequately established Ziobro's apparent authority as to this transaction. *Turnway Corp. v. Soffer*, 461 Pa. 447, 336 A.2d 871 (1975); *William B. Tanner Co., Inc. v. WIOO, Inc.*, 528 F.2d 262 (3d Cir.1975).

The Bank responds that Bolus had to have known that Ziobro could not have bound the Bank simply to finance the entire Bartonsville project since "... Banks are not like streams which flow forever....More importantly, such a loan is illegally [sic] as there is no way it could be collateralized and supported as required." Brief for Appellant at p. 14. However, the Bank has not chosen to provide us with any authority for this statement. Consequently, we have no way of knowing to what legal restriction on the Bank's lending activities it is referring.

As to what Bolus "had" to have known with respect to Ziobro's authority, we point out that the true inquiry is whether Bolus reasonably interpreted the manifestations of the Bank when Bolus concluded that Ziobro had the authority to bind the Bank to a commitment to fund the Bartonsville project. An admitted agent is presumed to be acting within the scope of his authority where the act is legal and the third party has no notice of the limitations on the agent's authority. *The Trident Corporation v. Reliance Insur. Co.*, 350 Pa.Super. 142, 150, 504 A.2d 285, 289 (1986). A principal's limitation on the agent's authority in amount only that is not communicated to the third party does not limit the principal's liability. *Industrial Molded Plastics Products, Inc. v. J. Gross & Son, Inc.*, 263 Pa.Super. 515, 398 A.2d 695 (1979).

Although a third party cannot rely on the apparent authority of an agent to bind a principal if he has

knowledge of the limits of the agent's authority, without such actual knowledge, the third party must exercise only reasonable diligence to ascertain the agent's authority. *Fishman v. Davidson,* 369 Pa. 39, 44, 85 A.2d 34, 37 (1951). The third party is entitled to believe the agent has the authority he purports to exercise only where a person of ordinary prudence, diligence and discretion would so believe. *Friedman v. Kasser,* 332 Pa.Super. 475, 481 A.2d 886 (1984). Thus, a third party can rely on the apparent authority of an agent when this is a reasonable interpretation of the manifestations of the principal. *Trident,* 350 Pa.Super. at 150, 504 A.2d at 289.

Given the evidence reviewed above, we conclude the jury here could have decided that Bolus acted reasonably in relying on Ziobro's representations as to his authority. We reiterate that Bolus was never required to deal with any other representative of the Bank, that the loan for the purchase of the land and construction of the Bartonsville project that Ziobro promised to Bolus did in fact come through, and that several witnesses testified that Ziobro repeatedly represented his authority and made commitments on behalf of the Bank which proved to be binding without first obtaining the approval of other Bank representatives.

Moreover, in order for Bolus to have believed that the Bank would fulfill the obligations to which Ziobro had committed the Bank, Bolus would not have had to believe that the Bank was agreeing to provide Bolus an endless source of funds. In fact, Bolus has consistently maintained that Ziobro committed the Bank to provide only the funds necessary to set up the project. Even after the Bartonsville project had expanded beyond its original scope, the estimated additional needs of Bolus were only approximately $100,-000, which is not an inordinately large sum in the context of commercial transactions such as this.

We can dispose of the Bank's remaining contentions in a more summary fashion.

## 2. *Inconsistency of Verdict*

As to the Bank's argument that it is entitled to a new trial because the jury's verdict was inconsistent, we can only respond that there is no support either in law or logic for this proposition. The jury generally found the Bank alone liable to all three plaintiffs and found Ziobro individually not liable. No special interrogatories as to each of the two causes of action were submitted to the jury nor did counsel for the Bank request them. The Bank now argues that the verdict is somehow inconsistent because of the finding of no liability as to Ziobro. The Bank thus asserts that the only reasonable interpretation of the verdict is that the Bank breached an oral contract with Bolus but was not liable for negligent misrepresentation. The Bank posits that it could only be found liable for negligent misrepresentation on a theory of respondeat superior as Ziobro's master and that its liability, being purely vicarious, completely depends upon a finding of Ziobro's liability as the Bank's servant.

 First, even if we were to accept the Bank's argument as to the correct interpretation of the verdict, we would not find any inconsistency in the verdict. We would find only that the jury found the Bank directly liable for breach of contract and assessed damages against it on that theory.

 In any event, we do not accept the Bank's argument. As the trial court has indicated, in this case there was an independent basis for the jury finding the Bank liable. The Bank's citation to Section 217B of the Restatement (Second) of Agency does not compel a contrary conclusion. Section 217B states:

Joinder of Principal and Agent

(1) Principal and agent can be joined in an action for a wrong resulting from the tortious conduct of an agent *or that of agent and principal,* and judgment can be rendered against each.

(2) *If the action is based solely upon the tortious conduct of the agent,* judgments on the merits for the agent and against the principal, or judgments of varying amounts for compensatory damages are erroneous.

Restatement (Second) of Agency 217B (1958) (emphasis added).

The Restatement clearly contemplates a situation such as this where there is an independent ground for liability of the principal. In such a case, there is no inconsistency in a verdict for the agent and against the principal. *Pryor v. Chambersburg Oil & Gas Co.,* 376 Pa. 521, 103 A.2d 425 (1954).

Moreover, we point out that Section 257 of the Restatement (Second) of Agency specifically addresses the liability of a principal for the tortious misrepresentations of his agent as follows:

A principal is subject to liability for loss caused to another by the other's reliance upon a tortious representation of a servant or other agent, if the representation is:

(a) authorized;

(b) apparently authorized; or

(c) within the power of the agent to make for the principal.

Restatement (Second) Agency § 257 (1958). Comment a to Section 257 explains "... the principal's liabilities do not depend upon the theory of respondeat superior but upon the reason underlying liability upon authorized or apparently authorized contracts." *Id.* comment a.

Thus, in a case like this, the Bank's liability, either in tort or contract, is not based upon the rules of vicarious liability of a master for the torts of his servant, but rather on the basis of the Bank's own act in holding Ziobro out as the Bank's agent with apparent authority to make financing representations on which a third party such as Bolus could justifiably rely.

The Pennsylvania cases the Bank cites us regarding the necessity of finding the agent liable before the principal can be liable all relate to the liability of a master *solely* predicated upon the tortious conduct of the servant. Moreover, the cited cases do not involve the tort of misrepresentation. *See Matkevich v. Robertson,* 403 Pa. 200, 169 A.2d 91 (1961); *Ferne v. Chadderton,* 363 Pa. 191, 69 A.2d 104 (1949).[1]

■ Even if we were to conclude that there was an inconsistency in the verdict in this case, we would view granting a new trial to correct that inconsistency as superflous and unjust as Justice Musmanno, dissenting in *Matkevich, supra,* found it to be in that case. 400 Pa. at 205–11, 169 A.2d at 94 (Musmanno, J., dissenting). The jury found the Bank liable to Bolus on either one or both of the theories on which the case was submitted and based on a plethora of credible evidence. The lack of a finding of liability against Ziobro does not undermine the jury's conclusion as to the Bank. Given the clear evidence of Ziobro's agency and of his and the Bank's acts, the Bank is unquestionably liable. *See Aiello v. Ed Saxe Real Estate, Inc.,* 508 Pa. 553, 499 A.2d 282 (1985) (principal liable to third parties for misrepresentations by agent even though principal did not authorize or even know of the agent's conduct and even if principal forbade such conduct). We will not give the Bank a second opportunity to present its case to a jury based on its technical objection to the verdict.

### 3. *Instruction on Compulsory Nonsuit*

The Bank next contends that it is entitled to a new trial because the trial court refused to instruct the jury that a compulsory nonsuit had been entered against Bolus on his conversion and tortious interference with contract theories.

---

1. The remaining Pennsylvania case the Bank cites, purportedly in support of its contention that the verdict is inconsistent, is *Nelson v. Duquesne Light Co.,* 338 Pa. 37, 12 A.2d 299 (1940). That case did not deal with a principal and agent or a master and servant. It deals with a situation of primary and secondary liability and is not pertinent here.

The Bank so argues because without this instruction, the Bank contends the jury was allowed to consider evidence relevant to the dismissed causes of action, but irrelevant and prejudicial to the Bank as to the remaining causes of action. The specific evidence the Bank refers to is:

a) evidence of the Bank's confession of a $500,000 judgment against Bolus when Bolus defaulted on a $500,-000 Small Business Administration guaranteed loan from the Bank to Bolus;

b) the Bank's refusal to grant.Bolus an additional $75,000 loan in order to enable Bolus to keep the Freightliner dealership at the Bartonsville project;

c) evidence regarding an auction sale Bolus conducted to generate cash flow and the Bank's seizure of the proceeds thereof pursuant to its liens on the auctioned property.

As we have so frequently reiterated, decisions regarding the admissibility of evidence are within the sound discretion of the trial court and we will disturb them only where the decision was both erroneous and harmful to the complaining party. *Bessemer Stores v. Reed Shaw Stenhouse*, 344 Pa.Super. 218, 224, 496 A.2d 762, 765 (1985).

The Bank apparently believes that upon the entry of the nonsuit, the evidence described above became irrelevant and prejudicial and the jury should have been instructed to disregard it. Evidence is relevant only when it tends to establish facts in issue or in some degree advance the inquiry. *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Super. 230, 433 A.2d 40 (1981). However, even evidence that is relevant must be excluded when it would confuse, mislead or prejudice the jury. To be prejudicial, evidence must have an "undue tendency to suggest decision on an improper basis." *Id.*, 289 Pa.Superior Ct. at 243, 433 A.2d at 47.

We do not find that the failure of the trial court to instruct the jury to disregard the evidence in question was an abuse of discretion sufficiently harmful, if at all, to warrant a new trial. The evidence was generally relevant

to establish the relationship of the Bank, Ziobro and Bolus. In particular, the evidence of the Bank's refusal to lend an additional $75,000 was directly relevant to the element of breach in Bolus's contract claim and to establish the falsity of the Bank's representation of continuing financing. The evidence of the auction and the judgment served to show the collapse of Bolus' enterprise, allegedly flowing from the Bank's conduct, and Bolus' efforts to save his business and, thus, mitigate his damages.

Nor was this evidence prejudicial to the Bank. The only degree to which it could have prejudiced the Bank would have been in swaying the jury's sympathies toward Bolus, but the trial court did instruct the jury not to base its decision on sympathy. (R. 997, 1008). A new trial is not warranted on this ground.

### 4. *Expert Testimony*

The Bank's final two allegations of error directed at the trial of this matter go to the testimony of Dr. Reavy, Bolus' expert witness, who testified as to Bolus' damages. As with all of the arguments the Bank has made in this appeal, the discussion in the Bank's brief of the alleged errors of the trial court as to Dr. Reavy's testimony is unclear and unsupported by applicable precedent.[2]

The admissibility of expert testimony is a matter initially to be determined by the trial court and we will not disturb that determination unless the trial court clearly abused its discretion. *Klyman v. Southeastern Pennsylvania Transportation Authority*, 331 Pa.Super. 172, 480 A.2d 299

---

2. We note that the Bank's brief is generally deficient and fails to comply with many of the briefing requirements of the Rules of Appellate Procedure. For example, the brief does not contain a Statement of Jurisdiction or a copy of the Order appealed from or Opinion of the trial court and the Statement of Questions and Summary of Argument both far exceed the length limitations the rules impose. *See* Pa.R.A.P. 2111, 2114–6, 2118. Given these deficiencies, we would certainly be justified in dismissing the Bank's appeal under Pa.R.A.P. 2101. We do not do so only because the Bank's brief does at least superficially raise certain issues on appeal which we deem to be of sufficient importance to merit our addressing them.

(1984); *Mapp v. Dube,* 330 Pa.Super. 284, 479 A.2d 553 (1984).

In this case, Dr. Reavy's qualifications as an expert on the subject matter of his testimony were not disputed by the Bank and, indeed, could not have been. Nor does the Bank apparently dispute the fact that damages for lost profits are recoverable in a case such as this either under a contract or tort theory. *Taylor v. Kaufhold,* 368 Pa. 538, 84 A.2d 347 (1951); *Kosco v. Hachmeister, Inc.,* 396 Pa. 288, 152 A.2d 673 (1959); *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243 (1983). Such damages are allowable where:

(1) there is evidence to establish them with reasonable certainty;

(2) there is evidence to show that they were proximately caused by the wrongful act; and

(3) in contract actions, they were reasonably foreseeable.

*Delahanty,* 318 Pa.Super. at 120, 464 A.2d at 1258 (citing, inter alia, *R.I. Lampus Co. v. Neville Cement Products Corp.,* 474 Pa. 199, 378 A.2d 288 (1977)).

 As with all determinations of damages, the question of whether and what amount of lost profits are recoverable is for the jury, and a reviewing court must accord great deference to the jury's determination. *Id.,* 318 Pa.Superior Ct. at 117, 464 A.2d at 1257. Although the plaintiff bears the burden of proving damages by a preponderance of the evidence, he is required only to provide the jury with a reasonable amount of information so as to enable the jury fairly to estimate damages without engaging in speculation. Damages need not be proved with mathematical certainty. *Id.* (citing, inter alia, *Greenberg v. McCabe,* 453 F.Supp. 765 (E.D.Pa.1978), *aff'd,* 594 F.2d 854 (3d Cir.1979); *Nemitz v. Reuben H. Donnelly Corp.,* 225 Pa.Super. 202, 310 A.2d 376 (1973)).

 With specific regard to prospective lost profits, the Supreme Court has specifically recognized the peculiar difficulties inhering in proving such damages. In *Massachu-*

*setts Bonding & Insur. Co. v. Johnston & Harder, Inc.,*
343 Pa. 270, 22 A.2d 709 (1941), the Court stated that the
following types of evidence are permissible to establish
such damages:

> "(1) ... (2) evidence of past profits in an established
> business furnish a reasonable basis for estimating future
> profits. (3) Profits made by others or by a similar con-
> tract, where the facts were not greatly different may also
> afford a reasonable inference of the plaintiff's loss. (4)
> The evidence of experts if based on anything more than
> individual opinion or conjecture has also been admitted."

*Id.*, 343 Pa. at 279–80, 22 A.2d at 714 (quoting Williston on
Contracts). The Court concluded that the allowance of
these types of proof demonstrate the "difficulty" or even
"impossibility" of more certain proof of future lost profits.
Thus, the law requires only that the "evidence shall with a
fair degree of probability establish a basis for the assess-
ment of damages." *Id.*, 343 Pa. at 280, 22 A.2d at 714.

In this case, Dr. Reavy testified both as to the profits
Bolus allegedly lost prior to trial and as to those he would
lose in the future. Dr. Reavy based his testimony on both
the actual records of Bolus' business, including ledgers,
financial statements and tax returns, and on trucking indus-
try profit data. The Bank fully cross-examined Dr. Reavy
and, as previously noted, did not object to Dr. Reavy's
qualifications.

■ First, we reject the Bank's general and unsupported
assertion that Dr. Reavy's testimony was too speculative to
permit the judge to charge the jury that they could consider
lost profits. The Bank does not explain why the testimony
was speculative and we have independently found no
ground for this assertion. Given the standards set forth
above for proof of lost profits, both past and future, we find
Dr. Reavy's testimony to have been more than adequate. It
was based upon precisely the types of evidence concerning
Bolus' business that the *Massachusetts Bonding* Court
sanctioned. And since this case involves an established
business of several years, it does not present the special

difficulties found in cases where damages for the future lost profits of a new and untried business are sought. *Delahanty, supra.*

We, therefore, respond to the Bank's general assertion of speculativeness in the same manner as we responded to a recent, similar challenge in *Standard Pipeline Coating Co., Inc. v. Teslovich, Inc.*, 344 Pa.Super. 367, 496 A.2d 840 (1985):

> ...we do not find that [the expert witness'] testimony could be regarded as highly speculative. It had a clear factual basis and adequately supported the jury's award of consequential damages. While it may be impossible to predict future business performance with total accuracy in a case such as this, an expert appraisal of probabilities is permissible testimony. The jury has discretion as to the weight such testimony is to be given.

*Id.*, 344 Pa.Superior Ct. at 378, 496 A.2d at 846. *See also Emerick v. Carson*, 325 Pa.Super. 308, 472 A.2d 1133 (1984) (contention that testimony of expert is flawed goes only to weight jury should accord it and not to its admissibility).

We also reject the Bank's more specific allegations of error. First, we are at a loss to understand the Bank's difficulty with Dr. Reavy's use of the business records of Bolus' business in making his calculations. The Banks says these records were not admitted into evidence and are hearsay. They were admitted (N.T. 388), albeit apparently over the Bank's objection, and the Bank has not preserved any objection to their admission on appeal. If it had, we would merely respond that the trial court clearly did not abuse its broad discretion in finding that these records were admissible under the Uniform Business Records as Evidence Act, 42 Pa.Cons.Stat.Ann. § 6108 (1982): *In re Estate of Indyk*, 488 Pa. 567, 413 A.2d 371 (1979) (when authenticating witness can provide sufficient information regarding preparation and maintenance of records to justify presumption of trustworthiness for the business records of a company, the hearsay character of the evidence is offset).

 We add that even if these records were technically inadmissible as hearsay, Dr. Reavy's reliance on them in expressing his expert opinion would still be proper. Following the guidance of the federal rules of evidence, our courts have liberalized the permissible bases for an expert's opinion testimony. Federal Rule of Evidence 703 permits an expert to base his opinion on facts or data not admissible in evidence if those facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject ..." F.R.E. 703.

In *Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971), our Supreme Court applied the theory of Rule 703 in allowing medical witnesses to express an opinion on medical matters based in part on reports of others although the reports themselves were not in evidence if the reports were of the type the expert would rely upon in the practice of his profession. *Id.,* 444 Pa. at 445, 282 A.2d at 698. Subsequent opinions of the Supreme Court and this Court reveal that the applicability of *Thomas* is not limited to the medical profession. *See Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978); *Maravich v. Aetna Life and Casualty Co.,* 350 Pa.Super. 392, 400–401, 504 A.2d 896, 900–1 (1986) (in action on fire policy where arson is alleged, fire marshall giving expert testimony may rely on information supplied to him by firemen under his supervision); *Steinhauer v. Wilson,* 336 Pa.Super. 155, 158, 485 A.2d 477, 479 (1984) (construction expert may base cost estimates on figures provided by various contractors with whom he consulted).

Dr. Reavy's reliance on Bolus' ledgers, tax returns and financial statements was, therefore, proper since it is beyond question that these are the types of data that an expert such as Dr. Reavy would reasonably and customarily employ in forming an opinion on the profits of a business. Indeed, since these records were admitted into evidence in this case, there is very little chance that Dr. Reavy's reliance on them could have prejudiced the Bank since they were thus available to the jury to use in evaluating the

credibility of Dr. Reavy's testimony. *Daniels,* 480 Pa. at 351–52, 390 A.2d at 178.

The Bank's further objection to Dr. Reavy's use of an eight percent (8%) interest factor in calculating Bolus' past profits instead of a six percent (6%) factor is made with *no* citation to authority or explanation of why the Bank objects. In fact, at trial, in response to the Bank's objection to the interest rate, Dr. Reavy recalculated Bolus' past profits with no interest at all. Given this fact, and the fact that the jury ultimately awarded Bolus only approximately one-half of the total amount of damages Dr. Reavy had calculated Bolus had suffered, any error in Dr. Reavy's calculation was clearly harmless.[3] *Harman v. Chambers,* 358 Pa. 516, 522, 57 A.2d 842, 845 (1948) (error is harmless where jury awards reasonable amount of damages despite trial court's error in failing to limit or restrict measure of damages).

The Bank's last objection to Dr. Reavy's testimony is that he testified as to a matter not appropriate for expert opinion testimony. The Bank so states because at trial Bolus' counsel posed a hypothetical question to Dr. Reavy that included the inference that Bolus had lost its Freight-liner dealership at Bartonsville because he had inadequate funding as a result of the Bank's conduct. Dr. Reavy then testified that in his opinion, the overall decline in Bolus' business was caused by lack of funding by the Bank.

---

3. The jury's verdict did not specify whether it included any interest factor and counsel for the Bank made no request at trial for the jury to do so. We, therefore, do not know whether the verdict in fact awarded Bolus any interest at all. Furthermore, we note that on appeal the Bank is specifically contending only that Dr. Reavy's use of an eight percent (8%) interest factor made his testimony speculative and as a result the trial court should not have submitted the issue of lost profits damages to the jury at all. As noted above, this argument is clearly without merit. The Bank does not allege, as it might have, that the trial court should have instructed the jury as to whether any interest or what rate of interest it could assess against the Bank. If the Bank had so argued, we might well agree that six percent (6%) would be the proper rate. *See American Enka Co. v. Wicaco Machine Corp.,* 686 F.2d 1050 (3d Cir.1982). We would, nevertheless, find the error to have been harmless.

 Although under Pennsylvania law an expert may not base his opinion on guess or conjecture, a hypothetical question posed to an expert may be based on an assumed set of facts and matters that appear in the record or are warranted by the evidence. *Collins v. Hand,* 431 Pa. 378, 246 A.2d 398 (1968); *Murray v. Siegal,* 413 Pa. 23, 195 A.2d 790 (1963). We have carefully reviewed this area of Dr. Reavy's testimony and find that the hypothetical question posed to him was based only on facts reasonably supported by the evidence and reasonable inferences therefrom. There was more than sufficient evidence from which a reasonable inference that Freightliner terminated the dealership because of Bolus' lack of funding could be drawn. Moreover, on cross-examination, the Bank had and took its opportunity to examine Dr. Reavy on this point and to suggest to him and the jury the other reasonable inferences that could be drawn from the evidence on this point. *See Evans v. Thomas,* 304 Pa.Super. 338, 346–348, 450 A.2d 710, 714–15 (1982) (errors in hypothetical question posed to expert adequately cured on cross-examination); *Whistler Sportswear, Inc. v. Rullo, supra.*

 As to the Bank's objection to Dr. Reavy testifying as to the cause of Bolus' financial loss, we do not find the question of the cause of the decline of a business to be one concerning a matter of such common knowledge as to preclude expert testimony. Expert testimony is appropriate on any subject that is "so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman." *McCormick on Evidence* at 33 (3d ed. 1984) (footnote omitted); *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 35, 485 A.2d 408, 415 (1984). On the other hand, expert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming special knowledge on the subject. *Collins v. Zediker,* 421 Pa. 52, 218 A.2d 776 (1966) ("How fast does a man walk?" is *not* question as to which jury need expert assistance); *Churbuck v. Union Railroad Co.,* 380 Pa. 181, 110

A.2d 210 (1955) (proper use of pick axe *is* subject properly addressed by expert).

The reasons for the decline of a particular business can be and usually are complex and related to many factors involving the internal management and control of the business, its financial structure, its operational methods, and external influences on the business such as the financial climate and condition of the market. If the reasons of the decline of a business were a matter of such common knowledge as the Bank asserts, we doubt that businessmen faced with such declines would so frequently consult with financial and management experts for assistance in determining the cause and remedy therefor. We find that Dr. Reavy's testimony was certainly of the type that would materially assist the jury in its search for the truth on this issue. *Dambacher, supra.* The Bank's objections thereto are without merit.

## 5. *Delay Damages*

Having determined that the trial court's refusal to grant a new trial survives all of the foregoing challenges, we now turn to the Bank's contention that the molding of the jury's verdict to add delay damages under Pennsylvania Rule of Civil Procedure 238 was improper. In the body of its Brief, the Bank attacks the award of delay damages on numerous grounds, including an assertion that Rule 238 is unconstitutional in that it violates the procedural due process rights of defendants.

During the pendency of this matter before this Court, the Supreme Court rendered its decision in *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986). In *Craig*, appellant-defendant levied a constitutional challenge to Rule 238 despite the fact that the Supreme Court had decided that Rule 238 passed constitutional muster in *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981). Upon reconsideration of the operation of Rule 238 in the factual context of *Craig*,

where the record revealed that the plaintiff may have substantially contributed to the delay in disposition, the Supreme Court decided that the Rule ran "too tight a gauntlet through Due Process, by denial of a forum to assess fault for the delay sought to be avoided." *Craig*, 512 Pa. at 65, 515 A.2d at 1353.

Thus, the *Craig* Court suspended those mandatory provisions of Rule 238 that assess delay damages without regard to fault. The Court set forth a substituted procedure for the determination of entitlement to delay damages. The procedure contemplates the filing of a petition seeking such damages and an answer thereto, to be followed by a hearing where necessary to resolve factual disputes. The *Craig* Court further specified that the court or arbitration panel adjudicating the delay damages issue must consider such factual matters as the parties' respective responsibilities for requesting continuances, compliance with the discovery rules and other factors pertinent to fault for delay.

As to the retroactive applicability of the suspension of portions of Rule 238, the *Craig* Court said:

> Those parties whose cases are now in the appellate or post-trial process, who have not asserted attacks on the Rule 238 aspect of the damage award, may not now assert such challenges. However, in those cases where the issue has been preserved, the court before whom the case resides on or after this date is to resolve the issue in a manner consistent with this opinion.

*Id.*

We are aided in our interpretation of this portion of the *Craig* opinion by the Supreme Court's recent decision in *Morgan v. Monessen Southwestern Ry. Co.*, 513 Pa. 86, 518 A.2d 1171 (1986). In *Morgan*, a case brought under the Federal Employers Liability Act ("FELA"), appellant attacked the lower court's imposition of Rule 238 delay damages on the ground that such damages could not be awarded in FELA cases. *Id.*, 513 Pa. at 95, 518 A.2d at 1175.

Writing for the majority, Justice Larsen indicated by way of footnote that the appellant in *Morgan* had not attacked Rule 238 on the ground that it offended due process. Thus, Justice Larsen concluded, *Craig* would not retroactively apply and no remand for the post-trial procedure set forth in *Craig* was required. *Id.*, 513 Pa. at 99 n. 5, 518 A.2d at 1177 n. 5.

We, therefore, read *Morgan* to at least impliedly require that *Craig* be applied retroactively only where an appellant has properly preserved a constitutional due process attack on Rule 238. In this case, the Bank repeatedly raised, both at trial and in post-trial motions, the precise constitutional due process challenge to Rule 238 that the *Craig* Court accepted.

Since we cannot sit as a factfinder and do not have before us a record that contains those facts the *Craig* Court found to be relevant to this inquiry, we must remand this case to the trial court as to the delay damages issue only for the fault finding process the Supreme Court has mandated. In so remanding, we resolve the matter consistent with the *Craig* opinion. *See Wilkerson v. Allied Van Lines Inc.*, 360 Pa.Super. 523, 538, 521 A.2d 25, 33 (1987) (remand under *Craig* ordered where appellant preserved Rule 238 issue at trial and in post-trial motions).

We note that we express no opinion as to the Bank's remaining non-constitutional challenges to the delay damage award in this case. Those issues may become moot depending on the results of the trial court's fault finding process. If the decision is adverse to the Bank, it will of course have the right to appeal from the decision and renew its challenges at that time.

Accordingly, we affirm the trial court's denial of a new trial but remand for a determination of Bolus's entitlement to delay damages in accordance with the *Craig* opinion. Jurisdiction is relinquished.