## Sullivan v. Ski Liberty Operating Corp.

C.P. of Adams County, no. 96-S-1039.

*John N. Keller,* for plaintiffs.
*Hugh M. Emory,* for defendant.

KUHN, *J.,* February 17, 1999—On December 12, 1996, Terry J. Sullivan, Husband, filed a complaint on behalf of his minor daughter, Abby Alise Sullivan, and himself against defendant. Count I seeks damages for personal injury suffered by Abby as a result of a skiing accident on February 9, 1996 at defendant's

ski resort, Ski Liberty, based upon defendant's alleged negligence in not providing her with appropriate ski rental equipment, and Count II seeks recovery by Husband of medical and related expenses incurred as a result of Abby's accident. On November 2, 1998, defendant filed a motion for partial summary judgment as to Count II, the claim for medical and related expenses. That motion is before the court for disposition.

Our Superior Court has recently set forth the standard for summary judgment as follows:

"Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa.C.S. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*" *Electronic Laboratory Supply Co. v. Cullen,* 712 A.2d 304, 307 (Pa. Super. 1998).

The pleadings and admissions reveal the following background. Abby was born on February 15, 1984. On November 30, 1995, her mother, Cynthia Sullivan, Wife, took Abby, then age 11, to Ski Liberty to enroll in the Ski School program. As part of the enrollment process, Wife signed a single page, 13-paragraph, document entitled "Ski Liberty rental and ski school liability release agreement." The agreement contained the following provision:

"(10) I hereby agree to release from any legal liability, Ski Liberty and its owners, agents and employees . . .

for any and all liability for damage, injury or death to my child . . . resulting from the selection, installation, maintenance, adjustment or use of the rental equipment and for any claim based upon negligence . . . or other legal theory accepting full responsibility on behalf of my child for any and all such damage, injury or death which may result."

Preprinted beneath the signature line, upon which Wife executed her signature, are the words *"The signature of one parent or guardian binds both parents or guardians concerning any losses they might have."*

The sole issue before the court is whether Wife's signature releasing defendant from liability is binding upon Husband and, in turn, his claim for payment of medical and related expenses incurred on behalf of their daughter. In other words, was Wife acting as Husband's authorized agent when she executed the release? Defendant concedes that the release is not binding on Abby. Plaintiff concedes that the release is binding upon Wife. See *Galisson v. Shawnee Mountain Ski Area,* 697 A.2d 281 (Pa. Super. 1996), *alloc. denied,* 549 Pa. 723, 702 A.2d 1060 (1997); *Simmons v. Parkette National Gymnastics Training Center,* 670 F. Supp. 140 (E.D. Pa. 1987). No Pennsylvania case precisely on point has been located.

Defendant has the burden of establishing the agency relationship. *Moyer v. Norristown-Penn Trust Co.,* 296 Pa. 26, 29, 145 A. 682, 683 (1929) ("One who asserts an agency must prove the authority of the agent to do the act in question."). For the reasons that follow, we conclude that the evidence of record presently, although close on the issue, is not sufficient to carry that burden.

There are four grounds upon which an agency relationship exists and upon which a principal is bound

by the act of the agent as against a third party. Those grounds include where the agent had (1) express authority directly granted by the principal to bind the principal as to certain matters, (2) implied authority to bind the principal to those acts of the agent that are necessary, proper and usual in the exercise of the agent's express authority, (3) apparent authority, *i.e.* authority that the principal has by words or conduct held the alleged agent out as having, and (4) authority that the principal is estopped to deny. *Bolus v. United Penn Bank,* 363 Pa. Super. 247, 259, 525 A.2d 1215, 1221 (1987), *alloc. denied,* 518 Pa. 627, 541 A.2d 1138 (1988).

There is no evidence in the record to establish an agency based upon express or implied authority. In fact, in Husband's affidavit, he expressly denies giving Wife authority to sign any release. Defendant points to the preprinted language below Wife's signature on the release that her signature binds both parents as evidence of her authority. However, that act standing alone is inadequate to establish express authority. Wife's deposition was not presented for consideration so we have no knowledge of what she may say about express authority given to her.

The record comes much closer to evidencing Wife's apparent authority to sign the release on behalf of Husband. The law is clear that an agent cannot, by his or her words alone, invest himself or herself with apparent authority because such authority emanates from the action of the principal, not from the acts of the agent. *Turnway Corp. v. Soffer,* 461 Pa. 447, 458, 336 A.2d 871, 876 (1975). Thus, Wife's signature on the release above the wording which indicates that such signature binds both parents is not enough, in and of itself, to establish the authority.

As noted above, apparent authority arises from words or conduct of the principal. It may be derived from a course of dealing or from a single transaction. *Turner Hydraulics Inc. v. Susquehanna Construction Corp.,* 414 Pa. Super. 130, 136, 606 A.2d 532, 535 (1992). Under the concept of apparent authority, the principal places his agent in a position where it would appear to third persons that the agent is authorized to act. It is said that,

"Where the principal places his agent in, or knowingly permits him to occupy a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone having occasion to deal with the agent is justified in inferring that he possesses such authority, unless the contrary shall be [shown]." *Passarelli v. Shields,* 19 D.&C.2d 66, 72 (1959), *affirmed,* 191 Pa. Super. 194, 156 A.2d 343 (1959).

Here, in Husband's deposition, he indicated that he and Wife gave Abby the ski package as a Christmas present. (Dep. at 9.) As had been the custom in the family, Husband worked as a referee in the winter and was not available from November through February. (Dep. at 14.) Therefore, arrangements for enrolling Abby in the ski program at Liberty and taking care of all the paperwork was one of Wife's roles in the family. (Dep. at 8, 15.) In fact, Wife was in charge of those details when Abby skied at Whitetail for several years before enrolling at Ski Liberty. (Dep. at 5-7.)

Defendant argues that the marital relationship and the division of duties within the family establishes the agency relationship in this case. "While the marital status in itself does not give rise to any agency relationship, it is competent evidence when considered with other circumstances as tending to establish that

one spouse was agent for the other." *Croft v. Malli,* 378 Pa. 6, 12, 105 A.2d 372, 376 (1954). However, Pennsylvania recognizes the uniqueness of the marital relationship in the law of agency.

" 'Neither husband nor wife by virtue of the relation has power to act as agent for the other. The relation is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife. Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all of her business affairs.' Restatement, Agency 2d, §22(b)." *Tonuci v. Beegal,* 188 Pa. Super. 66, 70, 145 A.2d 885, 888 (1958); see also, *Bradney v. Sakelson,* 325 Pa. Super. 519, 523, 473 A.2d 189, 191 (1984).

Therefore, in the situation where a wife is given responsibility to enroll the parties' child in activities, it is more likely that she is acting as her husband's agent in doing so than if an alleged agent was purportedly acting on behalf of an unrelated principal. Of course, all the circumstances must be considered and the third party cannot blindly accept the acts of the alleged agent as being authorized.

"Although a third party cannot rely on the apparent authority of an agent to bind a principal if he has knowledge of the limits of the agent's authority, without such actual knowledge, the third party must exercise only reasonable diligence to ascertain the agent's authority. . . . The third party is entitled to believe the agent has the authority he purports to exercise only where a person of ordinary prudence, diligence and discretion would so believe. . . . Thus, a third party can rely on the apparent authority of an agent when this is a reasonable interpretation of the manifestation of the

principal." *Bolus v. United Penn Bank, supra,* 363 Pa. Super. at 261-62, 525 A.2d at 1222. (citations omitted)

Husband contends that he only authorized Wife to enroll Abby to ski but not to release defendant from any claims he could otherwise pursue. Defendant contends that signing the release is part of the package that had to be signed in order to enroll in the program and that it was entitled to rely upon Wife's apparent authority. Regardless of the strength or attractiveness of either argument, "[w]hether an agency relationship exists is a question of fact for the jury . . .", *Bolus v. United Penn Bank, supra,* 363 Pa. Super. at 259, 525 A.2d at 1221, and where the facts are disputed, summary judgment on the issue is not proper.

Accordingly, the attached order is entered.

### ORDER

And now, February 17, 1999, defendant's motion for partial summary judgment, filed November 2, 1998, is denied.