XYOQUIP, INC., Plaintiff,

v.

James K. MIMS and Betty Mims,
Defendants.

No. GC 74–117–S.

United States District Court,
N. D. Mississippi,
Greenville Division.

Jan. 6, 1976.

Luther P. Crull, Jr., Liston, Crull & Gibson, Winona, Miss., for plaintiff.

G. Hite McLean, Kimbrough, Kimbrough & McLean, Greenwood, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was tried to the court, sitting without a jury, at the United States Courthouse in Greenville, Mississippi, on September 16, 1975. The parties have submitted post-trial memoranda and the action is ready for entry of the court's findings of fact and conclusions of law pursuant to Rule 52(a) Fed.R.Civ.P. They are incorporated in this memorandum.

The evidence in the case is without substantial conflict. Plaintiff, XYOQUIP, Inc., (hereinafter referred to as "plaintiff") is a foreign corporation organized and existing under the laws of the State of Ohio. Plaintiff has its principal place of business in the City of Cincinnati, State of Ohio, and has not, as a foreign corporation, qualified to do business in Mississippi. Defendants are husband and wife. They are adult resident citizens of and reside in the Northern District of Mississippi.

The court has subject matter jurisdiction of the action pursuant to 28 U.S.C.A. § 1332(a)(1), as the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between citizens of different states.

Plaintiff, at all times pertinent to this action, operated a general equipment leasing business and, among other pursuits, engaged in financing, through a leasing arrangement, the sale and distribution of slush drink freezers (hereinafter referred to as "machines") sold and distributed by the Freezie Corporation. The Freezie Corporation, during the time pertinent hereto, was a corporation operating under a charter of incorporation issued by the State of Georgia. Its home office and principal place of business were in Atlanta, Georgia.

The leasing arrangement contemplated that the Freezie Corporation, after locating a prospective user of its machines, would procure from the prospect a signed lease

and letter of acceptance acknowledging delivery and receipt of the machines. At the same time the Freezie Corporation would secure information from the prospect as to his or her financial status.

After securing the executed lease, acceptance letter, and financial statement, the Freezie Corporation would prepare an invoice evidencing a sale of the machines to plaintiff. A schedule of the serial numbers would then be prepared and attached to the lease and acceptance letter. The documents would be submitted to plaintiff, and if approved, plaintiff would execute the lease which would close the transaction.

The evidence reflects that on several occasions prior to November 8, 1971, Herbert Frady (hereinafter referred to as "Frady") representing the Freezie Corporation contacted defendants and undertook to interest them in acquiring the machines which were then being sold and distributed by his employer.

Relying upon representations made by Frady, defendants, on or about the date last mentioned, executed a lease agreement to be submitted to plaintiff for its acceptance by virtue of which defendants agreed to lease from plaintiff twenty of the machines marketed by the Freezie Corporation. Defendants executed an acceptance letter addressed to plaintiff in which defendants acknowledged receipt of the machines in acceptable condition and requested plaintiff to procure the machines from the Freezie Corporation for leasing to them. Defendants also furnished Frady with financial statements, reflecting their financial ability to perform the provisions of the lease agreement.

Neither the lease nor the acceptance letter, when executed by defendants, contained the serial numbers of the machines; each provided that the numbers would appear on an attached schedule. At the time of the execution of the lease, acceptance letter and financial statements, Frady delivered to defendants four of the machines, but did not deliver the other sixteen. Defendants were not acquainted with plaintiff at the time of the transaction and came to know plaintiff only because plaintiff's name appeared on the forms used in the transaction by Frady. Defendants relied entirely on Frady and trusted him to arrange the closing of the transaction. Defendants requested, and Frady left with them, a document upon which Frady guaranteed that the Freezie Corporation would deliver the other sixteen machines as requested by defendants.

Frady secured an invoice from the Freezie Corporation representing the sale of the twenty machines to plaintiff and prepared a schedule reflecting the serial numbers of the machines, a copy of which was attached to the lease agreement and acceptance letter.

Frady personally carried the invoice, lease, acceptance letter and financial statements to plaintiff's Cincinnati office two days later, November 10, 1971, and closed the transaction. The purchase price of the machines, as reflected by the invoice, was $21,000.

The evidence reflects that upon a review of the documents, plaintiff agreed to accept the lease and enter into the transaction. Thereupon plaintiff paid the Freezie Corporation the purchase price of the machines, as reflected by the invoice. The transaction was closed on November 10, 1971, but the lease is dated November 15, 1971. Whether it was actually signed on the 10th and dated the 15th is not reflected by the record. At any rate, the evidence sustains the finding that plaintiff approved and closed the transaction on November 10, 1971.

Plaintiff paid the Freezie Corporation the sum of $11,127.28, by check and entered a credit for the balance of the purchase price on Freezie's open account.

Plaintiff did not notify defendants of the acceptance of the lease until January 18, 1972 when plaintiff sent defendants a coupon book covering letter, the coupon book and an insurance letter.

The Freezie Corporation on November 22, 1971, filed a voluntary petition in bankruptcy in the United States District Court for the Northern District of Georgia. Defend-

ants were not listed as creditors in the bankruptcy schedules. The record does not reflect whether the sixteen undelivered machines were a part of the bankrupt estate.

Plaintiff was notified by Frady on January 16, 1972 that he delivered to defendants only four of the machines.

Plaintiff was named as a creditor in the schedules filed by the Freezie Corporation and on January 22, 1972, plaintiff filed its proof of claim in the bankruptcy proceedings alleging therein that the twenty machines involved in the action sub judice might be in the possession of the bankrupt.

Upon the receipt of the coupon book and related documents, defendants notified plaintiff that they had received only four machines, and that these were in a defective and inoperateable condition. Plaintiff acknowledged receipt of this letter on February 29, 1972.

Plaintiff initiated an action in a Florida state court against the former president of the Freezie Corporation seeking to recover of him the $11,127.28 which plaintiff had paid the Freezie Corporation on the purchase price of the machines. At the time of the trial of the action sub judice, the Florida proceedings had not been concluded.

The lease entered into between the parties described the leased property as being "20 used model '300' Freezie Slush Drink Freezers, S/N's on attached schedule". The costs of the machines to lessor-plaintiff is shown to have been the sum of $21,000. The lease is for the aggregate sum of $26,-472.60 payable in 36 monthly installments of $735.35 each. At the time of the purchase of the machines, plaintiff deducted from the purchase price, the sum of $2,206.05, representing the first and last two monthly payments on the lease, as advanced rental security deposit.

The defendants have not made any payment on the lease and more than three years has expired since its execution. All payment has matured in due course. Plaintiff filed this action on November 22, 1974.

█ Defendants deny any liability to plaintiff arising from the transaction. They assert that Frady was acting as the agent of plaintiff in negotiating the lease and preparing the documents and that plaintiff is responsible for his actions and conduct. The record is devoid of evidence that Frady acted as the agent of plaintiff. Frady was employed by the Freezie Corporation and not by plaintiff. Plaintiff did not invest Frady with any express or actual authority and the circumstances surrounding the parties does not warrant a holding of implied or apparent authority.

Frady carried forms used by plaintiff in its finance/leasing business and used these forms in the transaction with defendants. This fact alone, however, is not sufficient to establish an agency relationship between Frady and plaintiff. Such a practice is common in the commercial community. Defendants did not know of plaintiff's existence prior to the transaction. Frady did not hold himself out as plaintiff's agent. Defendants dealt with Frady as the salesman and agent of the Freezie Corporation. The evidence introduced by defendants makes it clear that they placed their trust in Frady and relied upon him to carry out the transaction and deliver the balance of the machines.

In 2A C.J.S. Agency § 36, it is stated:

The question of agency depends in a marked degree on the facts and circumstances of the particular case. The factual elements are a manifestation of the principal, by either his words or conduct or both, that the agent shall act for him, the agent's acceptance of the undertaking, and, most critically, the understanding of the parties that the principal is to be in control of the undertaking. Agency implies employment or service coupled with delegated authority to manage some affair for or on behalf of the principal and on his account, and to render an accounting of it.

The most that can be said in support of defendants' position is that plaintiff was engaged in financing the sale of the machines marketed by the Freezie Corporation. In carrying out this objective, plaintiff furnished the Freezie Corporation with

the forms customarily used by plaintiff in its business. Such circumstances do not, in the judgment of the court, operate to make Frady, plaintiff's agent.

Neither did plaintiff's conduct create an implied agency. There is no substantial evidence in the case to sustain a holding that plaintiff's conduct evidenced an intention on its part to create such a relationship.

■ There can be no apparent authority to act where an agency relationship, either actual, expressed, or implied, does not exist.

The Mississippi Supreme Court in *Steen v. Andrews* (1955), 78 So.2d 881, at 883 said:

A principal, having clothed his agent with the semblance of authority, will not be permitted, after others have been led to act in reliance of the appearances thus produced, to deny, to the prejudice of such others, what he has theretofore tacitly affirmed as to the agent's powers [citation omitted]. There are three essential elements to apparent authority: (1) *Acts or conduct of the principal;* (2) reliance thereon by a third person; and (3) a change of position by the third person to his detriment. All must concur to create such authority. [Emphasis supplied]

■ Defendants contend that plaintiff is prohibited from maintaining the action sub judice because, at the time of the transaction, plaintiff had not procured a certificate of authority to transact business in Mississippi. A foreign corporation transacting business in Mississippi without a certificate of authority is prohibited from maintaining any action, suit, or proceedings in any court in the state. Mississippi Code 1972 § 79-3-247. This prohibition is applicable in federal as well as in state court.

■ A foreign corporation is not deemed to be doing business in Mississippi in matters pertaining to the transaction of business in interstate commerce. Mississippi Code 1972 § 79-3-211(e). See *Humboldt Foods, Inc. v. Massey,* 297 F.Supp. 236 (N.D. Miss., 1968).

■ The facts and circumstances surrounding plaintiff's participation in the transaction sub judice does not, in the opinion of the court, sustain a finding that plaintiff was transacting business within the state in its relationship with the transaction here involved so as to subject plaintiff to the penalty of Section 79-3-247.

■ Defendants take the position that a viable lease does not exist. The acceptance letter above-mentioned, signed by defendants, provides in pertinent part: ·

"This is to acknowledge that we have received the equipment described above, that it is acceptable to us, and that you are hereby authorized to make payment to the abovenamed supplier."

The acceptance letter and the executed lease were presented to plaintiff at its Cincinnati office. Plaintiff evidenced its acceptance of the lease when, pursuant to defendants' request, plaintiff paid the Freezie Corporation for the machines. Formal notice of acceptance was not required to effectually bind the parties to the contract.

The court finds that the parties are bound by the lease agreement, and plaintiff has the right to sue thereon.

Defendants plead estoppel. They assert that plaintiff acquired early knowledge that defendants had not received twenty machines from the Freezie Corporation and that the Freezie Corporation was bankrupt. Defendants argue that plaintiff possessed knowledge of the bankruptcy of the Freezie Corporation, failed to alert them of this fact and thereby lulled them into inactivity, to their prejudice.

■ The court is not persuaded by argument that plaintiff is estopped to assert its rights against defendants. Plaintiff was diligent in its efforts to follow the twenty machines into the bankrupt estate and assert its lien thereon. Plaintiff was also diligent in proceeding against a former official of the Freezie Corporation to recover the amount of cash advanced in the purchase of the machines.

■ The evidence does not sustain defendants' contention that plaintiff is pro-

hibited from pursuing its claim against them because plaintiff elected to proceed against the property pledged with the lease and the former official of the Freezie Corporation. The relief sought by plaintiff in such actions was not inconsistent with the relief which plaintiff here seeks.

The circumstances revealed by this record present a regrettable situation. Defendants have received only four machines and they are inoperateable. Relying upon the honesty and integrity of Frady, and placing their trust in him, defendants armed Frady with documents which enabled him to defraud plaintiff; and plaintiff relying upon the truthfulness of the facts revealed by the lease and acceptance letter paid the Freezie Corporation the sum of $11,127.28, and extended credits as above mentioned. As it later developed, the open account of the Freezie Corporation was worthless because of its bankruptcy.

■ The rule of law is "that where one of two innocent parties must suffer from the fraud of a third, he who reposes trust and confidence in the fraudulent agent ought to bear the loss." *Weil Bros., Inc. v. Keenan,* 180 Miss. 697, 178 So. 90, 94 (1938). Here defendants reposed trust and confidence in Frady, the fraudulent agent. The defendants must, therefore, bear the loss resulting from his fraudulent conduct.

■ The court has encountered some difficulty in reaching a determination of the amount plaintiff is entitled to recover. It is clear that the award on the basis of the lease contract would be in the sum of $24,-266.55. Plaintiff's out-of-pocket loss amounted to $11,127.28.

The court has concluded, in light of all circumstances, that a judgment for $11,-127.28, with interest at eight percent per annum from the date of the advance, November 10, 1971, to the date of payment, will compensate plaintiff for its loss.

Accordingly, the clerk will enter a judgment for plaintiff for said sum with interest as directed, and all costs.