# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01119-SCT

*PATRIOT COMMERCIAL LEASING CO.*

*v.*

*JERRY ENIS MOTORS, INC. d/b/a MAGNOLIA CHEVROLET-BUICK-PONTIAC*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/29/2005 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SCOTT W. HUNTER |
| | WALTER MICHAEL GILLION |
| ATTORNEYS FOR APPELLEE: | MICHAEL DAVIS JONAS |
| | CANDACE COOPER BLALOCK |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 05/11/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.    Patriot Commercial Leasing Co. (Patriot) sought to enroll a foreign judgment against Jerry Enis Motors, Inc., (Enis) obtained in the Court of Common Pleas in Montgomery County, Pennsylvania, styled *Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc., d/b/a Magnolia Chevrolet-Buick-Pontiac*, case number 03-14790.  On July 7, 2004, Patriot filed a notice of filing in the Circuit Court of Monroe County, Mississippi, attached with the

authenticated foreign judgment and affidavit. The attached certified foreign judgment indicated a judgment "in the amount of $51,603.39, in favor of the Plaintiff, PATRIOT COMMERCIAL LEASING CO., and against the Defendant, MAGNOLIA CHEVROLET-BUICK-PONTIAC, a/k/a JERRY ENIS MOTORS, INC."

¶2.     The record also reflects that attached to the judgment is a certified copy of a praecipe to enter default judgment, styled *Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc. d/b/a Magnolia Chevrolet-Buick-Pontiac*, case number 03-14790, filed by Patriot's attorneys, Robert E. Walton and Robert R. Watson, Jr., with the Prothonotary, Court of Common Pleas, Montgomery County, Pennsylvania, which assessed damages as follows:

| | |
|---|---|
| Accelerated debt | $38,756.25 |
| Interest from May 22, 2003 | |
| ($38,765.25 x .18 x 123/365 days) | $2[,]350.86 |
| Subtotal | $41,107.11 |
| 25% attorney's fee per Complaint | $10,276.78 |
| Actual Costs (filing fee) | $    219.50 |
| | |
| Total: | $51,603.39 |

¶3.     Scott W. Hunter, Patriot's attorney licensed in Mississippi, provided the affidavit attached to the foreign judgment pursuant to Miss. Code Ann. § 11-7-305. The affidavit provided: (1) "Patriot Commercial Leasing Co. filed a lawsuit against Jerry Enis Motors, Inc., in the Court of Common Pleas in Montgomery County, Pennsylvania, case no. 03-14790" and (2) "[o]n September 24, 2003, judgment was entered against Defendant in favor of Plaintiff in the case, in the amount of $51,603.39."

2

¶4.     Enis filed a motion to strike the affidavit of Patriot's counsel and noticed hearing on the motion.  Patriot responded to the motion to strike the affidavit.  On July 21, 2004, Enis filed a motion to dismiss Patriot's efforts to enroll the foreign judgment.  Enis's motion to dismiss provided Patriot obtained the foreign judgment without securing jurisdiction over Enis.  On July 21, 2004, Enis filed a memorandum of authorities and an argument with attached exhibits in support of the motion to dismiss.

¶5.     On July 28, 2004, the trial court sua sponte ordered that Enis had twenty days to file an amended motion setting forth all of its intended defenses to the enrollment of the foreign judgment.  Patriot was ordered to file any response which it deemed necessary to the amended motion within the following twenty days. The trial court ordered, "thereafter, either party may present such other relevant evidence to the Court at a hearing on the amended motion that will be set on application by either party."

¶6.     Enis filed a motion seeking leave from the trial court to file a third-party complaint against Wayne Lemons (Lemons).  Enis filed the third-party complaint against Lemons. Lemons filed a response to Enis's third-party complaint.

¶7.     Patriot filed its supplemental response to Enis's motion to dismiss. Enis subsequently filed its reply to Patriot's supplemental response.  Patriot then filed a response to Enis's reply.  A hearing was set and noticed on Enis's motion to dismiss.  The trial court continued the hearing in order to grant the parties additional time to submit any affidavits or other documentary evidence and to allow Enis leave to depose Lemons and submit the transcript

3

of the deposition. The trial court ordered that the parties had thirty days to submit the items stated, after which, the trial court would enter its ruling on the issues presented by the pleadings and proof.

¶8. Enis filed its submission of final affidavit and accompanying argument. Upon receiving a transcript of Lemons's deposition, Enis submitted the deposition to the trial court. Patriot subsequently submitted its response to Enis's submission of final affidavit and accompanying argument. The trial court entered its order granting Enis's motion to dismiss. The trial court stated:

> Having reviewed and considered the pleadings, all evidentiary matters before the Court, authorities of law submitted by, and arguments of counsel, the Court is of the opinion, and so finds, that the rendering court in this case, The Court of Common Pleas in Montgomery County, Pennsylvania, in civil action number 03-14790, did not have personal jurisdiction over the Defendant (Enis) and, therefore, the judgment of the foreign court is not entitled to full faith and credit in this State.

## FACTS[1]

¶9. Jerry Enis (Jerry) formed Jerry Enis Motors, Inc., (Enis) in 1980 as a Mississippi corporation. Jerry was the corporation's principal stockholder, a director, the president of the board of directors, president and chief executive officer of the corporation, and the sole and only registered agent of the corporation to accept service of process on the corporation. Enis ceased to operate the dealership on June 3, 2002. The dealership was sold to Magnolia

---

[1] At times, the parties' full names may be used through out the opinion to provide clarity.

4

Automotive Management, Inc. (Magnolia), a Mississippi corporation. However, Magnolia did not have a GM dealership number required to purchase new GM vehicles. Enis entered a management agreement with Magnolia and Lemons to allow Magnolia to use its GM dealership number to order new vehicles until Magnolia was approved by GM as a dealership. When Magnolia was approved by GM, the sale of the dealership would be concluded.

¶10.    On June 3, 2002, Lemons and Magnolia entered into a management agreement with Enis to undertake the management of Enis's dealership upon the terms and conditions stated in the management agreement. (As it relates to the discussion of the management agreement, Lemons and Magnolia will be referred to collectively as Magnolia-Lemons.) Magnolia-Lemons was to provide its own operating capital and not cause Enis to fall into default with the new car manufacturers or with any floor plan financier or other vendor or party. The revenues produced and the net profits and/or losses from the operation of the dealership from and after June 3, 2002, belonged to Magnolia-Lemons.

¶11.    Pursuant to the terms of the agreement, Magnolia-Lemons was obligated to pay any and all operational expenses of the dealership incurred on or after June 3, 2002, of whatever nature, including but not limited to, floor plan interest, salaries, wages, utility bills, insurance, professional fees, advertising, taxes, rents, leases on equipment and property, the cost of all vehicles, parts and accessories and all other expenses whether of a general, sales or administrative nature which are incurred by Magnolia-Lemons. Enis exercised no authority

5

over the operation of Magnolia-Lemons. Magnolia-Lemons made all hiring and firing decisions and was responsible for all operating costs.

¶12. During the term of the contract, Magnolia-Lemons was only authorized to order all parts and new cars through Enis's dealership number, and Magnolia-Lemons was fully authorized and empowered to use the said dealership number for these purposes as if it belonged to Magnolia-Lemons. The agreement provided that the stated use of the dealership number was the only legitimate business use authorized. In Lemons's deposition, he testified that Magnolia's only legitimate business use of Enis's name was to deal with GM and buy new cars and parts. The agreement stated upon the close of the sale of the assets the agreement shall cease and terminate and shall become null and void.

¶13. On January 10, 2003, a software lease application was generated that would upgrade other software equipment already under lease to Magnolia and incorporated Magnolia's outstanding debt on its old software application.[2] The lease agreement was between Magnolia Chevrolet Buick Pontiac and Patriot Commercial Leasing Company. The record does not reflect that Enis ever had any contact with Patriot or had ever previously purchased any software from Patriot. The software lease was executed by Brian Vonderkeide on behalf of Magnolia. Vonderkeide was an employee and twenty-percent owner of Magnolia. Enis was not mentioned in the lease, and Vonderkeide had no connection to Enis. The lease

---

[2] Lemons testified in his deposition that to his knowledge his corporation, Magnolia, did not have an outstanding debt or existing lease with Patriot for software in his Nissan dealership or any of the other businesses.

6

agreement provided that Magnolia would submit to the jurisdiction of the Pennsylvania courts in the event of a dispute.

¶14.    On January 15, 2003, Derek Hollingsworth, another employee and ten-percent owner of Magnolia, executed an addendum to the lease agreement for auto loan 2000 software to change the lessee from Magnolia to Enis as the lessee of the software. No reason is provided in the record for executing the addendum. The addendum stated, "[t]he lease and all other documents given in conjunction therewith shall now read: JERRY-ENIS MOTORS, INC." Enis and Lemons both maintained that Hollingsworth had no authority to list Enis in the addendum. Lemons testified in his deposition that neither Vonderkeide nor Hollingsworth had any connection to Enis and both lacked authority to enter any lease agreement on behalf of Magnolia. Jerry's signature is not anywhere on the addendum to change the lessee from Magnolia to Enis. Likewise, Lemons's signature is nowhere on the addendum. No documentation to support a change in the name of the lessee was attached to the form. Furthermore, no correspondence is contained in the record from Patriot inquiring about the change in the name of the lessee.

¶15.    On February 14, 2003, Enis and Magnolia entered into a closing agreement for the sale of Enis's assets to Magnolia.[3] The closing agreement stated that Magnolia had obtained dealership approval from GM. As such, the agreement allowing use of Enis's dealership

---

[3] Unlike the management agreement, the closing agreement did not reference Lemons, only Magnolia. As such, the name Magnolia will be used.

number terminated on February 14, 2003, and Magnolia no longer needed to use Enis's dealership number.[4] The sale of Enis to Magnolia on June 3, 2002, was finalized on February 14, 2003, in the closing agreement.

¶16. The record does not reflect when Patriot filed its complaint in Pennsylvania, nor does it contain a copy of Patriot's complaint in Pennsylvania. However, the disputed service of process occurred on August 18, 2003. The record does not reflect that the process server was ever deposed or provided an affidavit in connection with the proceedings at hand. The record contains only a copy of an affidavit of service upon "Defendant, Jerry Enis Motors, Inc. d/b/a Magnolia Chevrolet-Buick-Pontiac" dated August 20, 2003.

¶17. The process server, whose name appears to be Herb Wells, stated that on August 18, 2003, he effected "personal service to [sic] Wayne Lemons co-owner at 2:30 p[.]m[.]" The copy of the affidavit of service in the record does not contain any more information as to the process server. From this limited information, Patriot's attorney in Pennsylvania, Robert E. Walton, somehow provided an affidavit in which he stated:

> Enis was personally served with a copy of the Complaint filed in this matter on August 18, 2003 by way of a process server handing a copy of the Complaint to Wayne Lemons who represented himself to be a co-owner of Enis and an authorized representative to accept service, which service satisfies the Pennsylvania Rules of Court for Personal Service of original process.

---

[4] Magnolia-Lemons had use of Enis's GM dealership number from June 3, 2002, until February 14, 2003.

8

However, Lemons's testimony disputes the assertion that he represented himself to be a co-owner of Enis authorized to accept process on Enis.

¶18.    Lemons testified in his deposition that at the time he was served he was definitively not at Jerry Enis Motors' place of business.  Lemons testified if he was served at the dealership, then it was at the dealership of Magnolia, not Enis.  Lemons did not recall telling the process server that he was a co-owner.  However, if he did, it was the co-owner of Magnolia, not Enis.  **Lemons testified in his deposition that he was never at any time a co-owner of Enis**.

¶19.    A printout in the record from the Mississippi Secretary of State lists the registered agent of Jerry Enis Motors, Inc., as Jerry Enis.  Prior to June 3, 2002, Enis had been a General Motors (GM) dealership operating at 317 Highway 45 North, Aberdeen, Mississippi.  Likewise, a printout in the record from the Mississippi Secretary of State lists Lemons, a co-owner of Magnolia, as the sole registered agent for Magnolia.  Neither Wayne Lemons nor Magnolia Automotive Management, Inc., were ever a co-owner of Jerry Enis Motors, Inc.  Likewise, neither Jerry Enis nor Jerry Enis Motors, Inc., were ever a co-owner of Magnolia Automotive Management, Inc.

## DISCUSSION

¶20.    Enrollment and enforcement of foreign judgments in Mississippi are governed by statute.  Miss. Code Ann. §§  11-7-301-309; *See Davis v. Davis*, 558 So. 2d 814, 816 (Miss. 1990).  In *Davis*, 558 So. 2d at 817, this Court held:

9

This State is required by the United States Constitution, Art. IV, Sec. 1, to give full faith and credit to all final judgments of other states and federal courts unless (1) "the foreign judgment itself was obtained as a result of some false representation without which the judgment would not have been rendered" *Reeves Royalty Co., Ltd. v. ANB Pump Truck Service*, 513 So. 2d 595, 598 (Miss. 1987), or (2) "the rendering court did not have jurisdiction over the parties or the subject matter." *Sollitt v. Robertson*, 544 So. 2d 1378 (Miss. 1989).

¶21. The lack of jurisdiction over the parties is the primary limitation that tempers application of full faith and credit of foreign judgements. *Sollitt*, 544 So. 2d at 1381; *Fauntleroy v. Lum*, 210 U.S. 230, 237, 28 S. Ct. 641, 52 L. Ed. 1039, (1908) (want of jurisdiction over the person or the subject matter might be shown to deny full faith and credit).

¶22. As a general rule, in order to determine the validity of a foreign judgement, we must look to the law of the state that rendered the judgment. *Lambert v. Lawson*, 538 So. 2d 767, 769 (Miss. 1989). In *Lambert*, this Court stated:

[T]he **full faith and credit clause applies only** where the judgment of a foreign state is founded upon **adequate jurisdiction of the parties and subject matter**, Restatement 2nd, Conflict of Laws, §§ 104, 105, pp. 315-316 (1969); **extrinsic evidence is admissible in a collateral attack upon a foreign judgment to show that it is void**, Restatement, Judgments, § 12, p. 69 (1942); and a judgment which is void is subject to collateral attack both in the state in which it is rendered and in other states. *Id*. § 11, p. 65.

*Id*. (emphasis added). The standard of review for questions of law, such as questions concerning personal jurisdiction of courts, is de novo. *Syngenta Crop Protection, Inc. v. Monsanto Co.*, 908 So. 2d 121, 124 (Miss. 2005); *Starcher v. Byrne*, 687 So. 2d 737, 739 (Miss. 1997) ("Our standard for review is de novo in passing on questions of law.").

## I. Agency-Apparent Authority

¶23.   Enis argued to the trial court and on appeal that Patriot's suit lacked personal jurisdiction as Magnolia was not Enis's agent, had no express or contractual authority to bind Enis to the software lease as its agent, nor did Magnolia have apparent authority to bind Enis. Enis maintained that no principal-agent relationship of any kind existed.  As such, Enis claims the wrong party was named in the lawsuit.

¶24.   Enis contended that on June 3, 2002, Lemons and Magnolia entered into a management agreement with Enis to undertake the management of Enis's dealership upon the terms and conditions stated in the management agreement.  The actual contract or agreement specified that Magnolia-Lemons was only authorized to use Enis's dealership number to purchase vehicles and parts from GM until it obtained its own dealership number.  This was done to facilitate the sale of the dealership.  Pursuant to the terms of the agreement, Magnolia-Lemons was obligated to pay any and all operational expenses of the dealership incurred on or after June 3, 2002, of whatever nature, including but not limited to, **leases on equipment and property**, which are incurred by Magnolia-Lemons.  Enis exercised no authority over Magnolia-Lemons's operations.

¶25.   On February 14, 2003, Enis and Magnolia entered into a closing agreement to finalize the sale of Enis's assets to Magnolia.  Magnolia had obtained its own GM dealership number. The agreement allowing use of Enis's dealership number terminated on February 14, 2003. On August 18, 2003, Patriot served Wayne Lemons with process in ***Patriot Commercial***

*Leasing Co. v. Jerry Enis Motors, Inc., d/b/a Magnolia Chevrolet-Buick-Pontiac*, case number 03-14790, in the Court of Common Pleas in Montgomery County, Pennsylvania.

¶26.    Patriot argued at trial and on appeal that Magnolia had apparent authority as Enis's agent to bind Enis, the principal, to the software lease agreement. Patriot argued it relied, to its detriment, on Magnolia's apparent authority to bind Enis to the software lease agreement. As such, Patriot contends personal jurisdiction existed and the trial court erred in finding lack of personal jurisdiction.

¶27.    The trial court in its bench opinion did not specifically address agency. However, Patriot made its agency argument in support of jurisdiction to the trial court, and Enis defended the assertion. The trial court determined Patriot did not have personal jurisdiction over the Defendant, Enis, and, therefore, the judgment of the foreign court was not entitled to full faith and credit in this State.

¶28.    On appeal, Patriot correctly contends that Pennsylvania's use of apparent authority is consistent with the laws of Mississippi regarding apparent authority under a theory of agency. In ***Basile v. H & R Block, Inc***., 563 Pa. 359, 761 A. 2d 1115, 1121 (2000), the Pennsylvania Supreme Court held:

> The special relationship arising from an agency agreement, with its concomitant heightened duty, **cannot arise from any and all actions**, no matter how trivial, arguably undertaken on another's behalf. Rather, the action must be a matter of consequence or trust, such as the **ability to actually bind the principal or alter the principal's legal relations**. Indeed, implicit in **the long-standing Pennsylvania requirement that the principal manifest an intention that the agent act on the principal's behalf is the notion that the agent has authority to alter the principal's relationships with third**

12

**parties**, such as binding the principal to a contract. Notably, the Restatement, which we have cited with approval in this area in the past, specifically recognizes as much. *See* Restatement (Second) of Agency § 12 ("An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself.").

(Emphasis added).

¶29. An agency relationship exists and a principal is bound by the acts of the agent as against a third party where the agent had (1) express authority directly granted by the principal to bind the principal as to certain matters, (2) implied authority to bind the principal to those acts of the agent that are necessary, proper and usual in the exercise of the agent's express authority, (3) **apparent authority, i.e. authority that the principal has by words or conduct held the alleged agent out as having**, and (4) authority that the principal is estopped to deny. *See **Bolus v. United Penn Bank**,* 363 Pa. Super. 247, 259, 525 A. 2d 1215, 1221 (1987), alloc. denied, 518 Pa. 627, 541 A. 2d 1138 (1988).

¶30. While a third party cannot rely on the apparent authority of an agent to bind a principal where he has actual knowledge of the limits of the agent's authority, without such actual knowledge, the third party must exercise only reasonable diligence to ascertain the agent's authority. ***Bolus***, 525 A. 2d at 1222 (citing ***Fishman v. Davidson***, 369 Pa. 39, 44, 85 A. 2d 34, 37 (1951)). Apparent authority is the "power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted." ***Revere Press, Inc. v. Blumberg***, 431 Pa. 370, 375, 246 A. 2d 407, 410 (1968).

13

¶31.　Likewise, in ***Trident Corp. v. Reliance Ins. Co.***, 350 Pa. Super. 142, 504 A. 2d 285, 288 (Pa. Super. Ct. 1986), the Superior Court of Pennsylvania further defined apparent authority as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." *See also* ***Sauers v. Pancoast Personnel, Inc***., 294 Pa. Super. 306, 309, 439 A. 2d 1214, 1215 (1982) ("Apparent authority exists when the principal has led a third party into believing that the licensee was the principal's agent.")

¶32.　In ***Travelers Cas. & Sur. Co. v. Castegnaro***, 772 A. 2d 456, 460 (Pa. 2001), the Supreme Court of Pennsylvania stated that the principal is liable to third parties for acts of his agent. The Pennsylvania Supreme Court based the premise of liability upon the theory that the principal who has placed the agent in a position of trust and confidence, rather than an innocent stranger, should be the one to suffer the wrongful act of the third party. *Id*.

¶33.　Similarly in Mississippi, this Court, in ***Steen v. Andrews***, 223 Miss. 694, 78 So. 2d 881, 883 (Miss. 1955), stated:

> The power of an agent to bind his principal is not limited to the authority actually conferred upon the agent, but the principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably appears to be. So far as third persons are concerned, the apparent powers of an agent are his real powers. 2 C.J.S., Agency, §§ 95, 96.

¶34.　This Court stated the standard to be applied in reviewing whether apparent authority existed as follows:

14

> The finder of fact must determine whether there is sufficient evidence to meet the **three-pronged test for recovery under the theory of apparent authority**, which requires a showing of (1) acts or conduct of the principal indicating the agent's authority, (2) reasonable reliance upon those acts by a third person, and (3) a detrimental change in position by the third person as a result of that reliance. *Christian Methodist Episcopal Church v. S & S Construction Co., Inc.*, 615 So. 2d 568, 573 (Miss. 1993); *Alexander*, 609 So. 2d at 403; *Andrew Jackson*, 566 So. 2d at 1181; *Clow*, 356 So. 2d at 582. Once made, "[t]his finding will not be disturbed unless clearly contrary to the overwhelming weight of credible evidence when viewed in the light most favorable to the verdict." *CME Church*, 615 So. 2d at 573, 574; *Andrew Jackson*, 566 So. 2d at 1181.

*Eaton v. Porter* 645 So. 2d 1323, 1325-26 (Miss. 1994) (emphasis added). "There can be no apparent authority to act where an agency relationship, either actual, expressed, or implied does not exist." *XYOQUIP, Inc. v. Mims*, 413 F. Supp. 962, 966 (N.D. Miss. 1976).

¶35. Here, the record does not demonstrate Enis by his conduct or words held Magnolia-Lemons out to be his agent to Patriot. Neither Jerry Enis nor Jerry Enis Motors, Inc., were ever a co-owner of Magnolia Automotive Management, Inc. Enis ceased to operate the dealership on June 3, 2002, and Enis entered a management agreement with Magnolia and Lemons which allowed Magnolia to use its GM dealership number only to order new vehicles and parts until Magnolia was approved by GM as a dealership. In Lemons's deposition, he testified that Magnolia's only legitimate business use of Enis's name was to deal with GM and buy new cars and parts.

¶36. The software lease that would upgrade other software equipment already under lease to Magnolia was generated on January 10, 2003. According to the lease application, this lease consolidated an outstanding debt Magnolia already had with Patriot. The lease

15

agreement was between Magnolia Chevrolet Buick Pontiac and Patriot Commercial Leasing Company, not Enis and Patriot. Enis never undertook any representation or action with Patriot to bind Enis to the lease. Likewise, Enis never represented to Patriot that Magnolia had authority to bind Enis to the software lease. On February 14, 2003, Enis and Magnolia entered into a closing agreement which finalized the sale of Enis's assets to Magnolia. On August 18, 2003, Patriot served Lemons with a complaint against Jerry Enis Motors, Inc. d/b/a Magnolia Chevrolet Buick Pontiac.

¶37. Based on the record, Enis undertook no conduct to represent to Patriot that it was the lessee or that Magnolia-Lemons had any authority to bind it to a lease for software. Furthernore, no documentation or correspondence was attached or produced that demonstrated that Enis had assumed the lease. Patriot appears to have blindly and unjustifiably relied upon the addendum without any follow-up. The record does not reflect that Enis, or Jerry Enis, were ever contacted regarding the lease. Likewise, Jerry Enis, owner and registered agent of Enis, was never served with process. It is undisputed that by the time Patriot served Lemons on August 18, 2003, for failure to make lease payments, Enis no longer operated a dealership at that location. Enis never at any time assumed any ownership interest in Magnolia Automotive Management, Inc., Magnolia-Lemons, or Magnolia Chevrolet Buick Pontiac. Patriot allowed the lessee to just change the name of who should be obligated for the lease. However, Patriot's bad business decision to blindly change the

16

lessee name should not obligate Enis for Magnolia's lease agreement. We find the trial court did not err in granting Enis's motion to dismiss for lack of personal jurisdiction.

## II. Service of Process

¶38. Enis also argued at the trial court lack of personal jurisdiction challenging the sufficiency of the service of process. Patriot contended at trial and argues on appeal that the service of process on Jerry Enis properly conformed to the method allowed under Pennsylvania. Enis counters on appeal that the service of process was fatally defective, and as such, Patriot lacked personal jurisdiction over Enis. Patriot served Lemons on August 18, 2003, with process in *Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc., d/b/a Magnolia Chevrolet-Buick-Pontiac*, case number 03-14790, filed in the Court of Common Pleas in Montgomery County, Pennsylvania. Jerry Enis was not served.

¶39. Patriot contends Enis was personally served with a copy of the complaint filed in this matter on August 18, 2003, by way of a process server handing a copy of the complaint to Lemons as a co-owner of Enis. Patriot argues the service of process on Lemons satisfied the Pennsylvania Rules of Civil Procedure for personal service of process.

¶40. "The rules relating to service of process must be **strictly** followed, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made...." *Sharp v. Valley Forge Med. Ctr. and Heart Hosp*., 422 Pa. 124, 221 A. 2d 185, 187 (1966) (emphasis added). Therefore, defective service of process results in failure to

17

acquire jurisdiction over the person or party.  The Pennsylvania Rule of Civil Procedure 402

(a)(2)(iii) provides original process may be served as follows:

[B]y handing a copy

> (iii) at any office or **usual place of business of the defendant** to his agent or to the person **for the time being in charge thereof**.

(Emphasis added).

¶41.   Proper service of process "upon a person in charge of a person's business" is effected

if there exists a "sufficient connection between the person served and the defendant to

demonstrate that service was reasonably calculated to give the defendant notice of the action

against it." *Cintas Corporation v. Lee's Cleaning Services, Inc.*, 549 Pa. 84, 700 A. 2d 915,

920 (1997); *see also In re McElhatton*, 729 A. 2d 163, 167 (Pa. Commw. Ct. 1999).  The

decisive factor in determining whether an individual is "in charge of the place of business"

is whether there is a sufficient connection with the business.  *In re McElhatton*, 729 A. 2d

at 167.

¶42.   According to a printout in the record, the Mississippi Secretary of State listed the

registered agent of Jerry Enis Motors, Inc., as Jerry Enis, not Wayne Lemons.  Also, another

printout in the record from the Mississippi Secretary of State listed Wayne Lemons as the

sole registered agent for Magnolia Automotive Management, Inc.  Neither Lemons nor

Magnolia were ever a co-owner of Jerry Enis Motors, Inc.  Likewise, neither Jerry Enis nor

Jerry Enis Motors, Inc., were ever a co-owner of Magnolia.  In his deposition, Lemons

18

testified that at the time he was served he was definitively not at Jerry Enis Motors' place of business. Lemons also testified that he never told the process server that he was a co-owner of Enis.

¶43.　Enis and Magnolia entered into a closing agreement on February 14, 2003, for the sale of Enis's assets to Magnolia. This finalized the sale from Enis to Magnolia. Magnolia had obtained its dealership number and no longer needed to use Enis's to purchase vehicles. Lemons was served with process on August 18, 2003, months after the closing of the sale transpired. Enis no longer owned the property, and it was no longer Enis's usual place of business. The place of business now belonged to Lemons who was a co-owner of Magnolia, not Enis. Enis never exercised any authority or control over Magnolia. Enis contends that Lemons did not have authority from Enis, or a sufficient connection with Enis, to accept process on behalf of Enis.

¶44.　We find the service of process was defective. Clearly, Enis was not properly served. Pennsylvania law allows service by handing a copy of the summons and complaint at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof. Enis no longer operated a dealership at that location. As such, it was not Enis's usual place of business, nor was Lemons at the time, or any time, in charge of Enis's business there. Lemons testified that he never informed the process server that he was a co-owner of Enis. Pennsylvania law requires the rules relating to service of process must be strictly followed in order to confer jurisdiction. Here, the rules of service were not

19

strictly followed. Without proper service of process, Patriot lacked personal jurisdiction over

Enis. We find the trial court properly dismissed the action for lack of jurisdiction.

## CONCLUSION

¶45. For the foregoing reasons stated herein, the judgment of the Circuit Court of Monroe

County, Mississippi, is affirmed.

¶46. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J. AND DIAZ, J., NOT PARTICIPATING.**