ISHEE, J.,
for the Court:
¶ 1. In 2006, Paul and Tiffany Baughman contacted Albright Manufactured Homes (Albright) about purchasing a mobile home (the home) to place on their land in Hancock County, Mississippi. Albright’s principal agent, Randy Reed, assisted the Baughmans in ordering the home of their choice from Cavalier Home Builders (Cavalier). Several months later, the home was delivered to Albright from Cavalier, at which point Albright signed off on the home and delivered it to the Baughmans’ lot. Albright then assembled the home on-site. The Baughmans experienced numerous problems with the home and continually contacted Albright and Cavalier to repair the home’s deficiencies, to no avail. The Baughmans eventually filed suit against Reed, Albright, and Cavalier. However, Reed disappeared, and Albright closed its business; thus, neither party responded to the Baughmans’ complaint. A jury tidal took place in 2006 in the Hancock County Circuit Court. Despite Reed’s and Albright’s failure to appear, the jury assessed damages against Al-bright in the amount of $40,000 and against Cavalier in the amount of $140,000. Cavalier quickly filed a motion for a judgment notwithstanding the verdict (JNOV), a motion for a new trial, and a motion for a remittitur. The circuit court denied all of the motions, and Cavalier now appeals. Finding reversible error, we reverse and render the $140,000 judgment against Cavalier. Since Albright is not a party to the appeal, this opinion does not affect the $40,000 judgment against it.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. In February 2006, the Baughmans visited Albright’s retail lot to shop for a home. While inside Albright’s office, Tiffany noticed a white banner with Cavalier’s logo on it that read “Authorized Dealer.” As such, Tiffany believed she was dealing directly with Cavalier in the purchase of their home.
¶ 3. On February 7, 2006, the Baugh-mans contracted with Albright to custom order a Cavalier model double-wide manufactured home. The Baughmans then made a $40,000 down payment on the home to Albright with a check made out to Albright. Although Albright issued a receipt for the payment to the Baughmans, it is noteworthy that Cavalier does not require a down payment of any kind for a custom-ordered home.
¶ 4. Albright then ordered the home from Cavalier. Cavalier manufactured the home in Alabama, during which time the home passed all of the quality-control checks in place by Cavalier. In March 2006, the home was delivered to Albright’s retail-lot location, where Reed signed on behalf of Albright to acknowledge the *901 home was in good condition when it arrived on Albright’s lot.
¶ 5. In actuality, Albright was only a retailer for Cavalier and was not an authorized dealer. Cavalier’s representative, Jerry Dudley, testified that Albright was never Cavalier’s authorized dealer and that Cavalier had never provided any “authorized dealer” banner to its retailers. Under the retailership agreement between Cavalier and Albright, Albright acknowledged that it carried the responsibility of transporting, delivering, setting up, and installing Cavalier homes on purchasers’ properties. However, Cavalier had no control over Albright’s operations.
¶ 6. When Albright transported and delivered both halves of the home to the Baughmans’ property, the Baughmans noticed that the rear corner of the back half of the home had been significantly damaged. Nonetheless, Albright continued with the setup and installation of the home, which included setting the home on concrete runners; “marrying,” or joining, the two halves of the home together; selecting and installing the outdoor air-conditioning unit; and connecting the home to electricity, water, and sewer-utility services.
¶ 7. Soon after installation took place, the Baughmans noticed severe problems at the marriage line, or the roof line where the two halves of the home were joined. Although the Baughmans had not moved in yet, they also began experiencing electrical, appliance, and water problems in the home. They contacted both Albright and Cavalier.
¶ 8. Cavalier fixed all cosmetic issues and any potential manufacturing problems. Additionally, Cavalier attempted to fix some problems that had arisen in installation. Albright also attempted numerous repairs. Nonetheless, the issues continued. The Baughmans eventually filed a formal complaint with the Mississippi State Fire Marshal’s Manufactured Housing Division (Fire Marshal). Upon inspection, the Fire Marshal ordered Albright and Cavalier to fix several remaining problems. Cavalier continued its attempt at fixing numerous problems. Albright failed to do the same.
¶ 9. The Baughmans rescinded their purchase contract with Albright, requested that the home be removed from their property, and demanded a refund of them down payment. Unfortunately, Albright had already gone out of business, and Reed had disappeared along with the Baughmans’ down payment.
¶ 10. The Baughmans were never able to move into the home due to the problems. The home’s issues also caused the Baughmans’ financing to collapse since the home failed to pass the Federal Housing Administration’s inspection. Accordingly, Albright’s finance company picked up the home from the Baughmans’ lot in May 2007. As such, the Baughmans never actually purchased, owned, or moved into the home.
¶ 11. The Baughmans then filed suit against Cavalier, Albright, and Reed; individually, seeking the return of their down payment. At trial, the Baughmans submitted the case to the jury on theories of breach of contract, products liability, and agency. The jury returned a verdict in favor of the Baughmans against Cavalier in the amount of $140,000 and against Al-bright in the amount of $40,000. Shortly thereafter, Cavalier filed a motion for a JNOV, a motion for a new trial, and a motion for a remittitur. The circuit court conducted a hearing on Cavalier’s motions and denied them. Cavalier timely appeals, claiming the circuit court erred in its denial of the motions.
*902 DISCUSSION
¶ 12. A JNOV motion “tests the legal sufficiency of the evidence supporting the verdict,” whereas a motion for a new trial “simply challenges the weight of the evidence.” Janssen Pharmaceutica, Inc. v. Bailey, 878 So.2d 31, 54-55 (¶ 107) (Miss.2004) (citations omitted). If, after considering all of the evidence in the case, “the facts and inferences so considered point so overwhelmingly in favor of the movant [ (requesting a JNOV) ] that reasonable [jurors] could not have arrived at a contrary verdict, granting the motion [ (for a JNOV) ] is required.” Id. (citation omitted). However, we will reverse the denial of a motion for a new trial only if “the verdict is so contrary to the overwhelming weight of the evidence that[ ] to allow it to stand[ ] would be to sanction an unconscionable injustice.” Id. (citation omitted).
¶ 13. We first consider the denial of Cavalier’s JNOV motion, which we review de novo. See Univ. of S. Miss. v. Williams, 891 So.2d 160, 167-68 (¶ 14) (Miss.2004) (citation omitted). We must determine if there is substantial evidence to support the jury’s verdict against Cavalier. The Mississippi Supreme Court has stated that substantial evidence constitutes “information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions.” U.S. Fid. & Guar. Co. of Miss. v. Martin, 998 So.2d 956, 964 (¶ 19) (Miss.2008) (citation omitted).
¶ 14. Here, the jury returned a verdict against Cavalier in the amount of $140,000 and against Albright in the amount of $40,000. The judgment against Albright was properly granted pursuant to the Baughmans’ breach-of-contract claim against Albright. However, Cavalier’s liability must have been based on one of the following two theories presented by the Baughmans at trial: (1) products liability or (2) breach of contract. With regard to the products-liability claim, the Baugh-mans only submitted one jury instruction on the matter, claiming negligent manufacturing.
¶ 15. Mississippi Code Annotated section 11-1-63 (Supp.2011) governs products liability and states in pertinent part:
(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
(i) The product was defective because it deviated in a material way ... from the manufacturer’s specifications or from otherwise identical units ...; and
(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.
Accordingly, the Baughmans must have proven by a preponderance of the evidence that at the time the home left Cavalier’s manufacturing plant, the home materially deviated from Cavalier’s specifications; the defective condition made the product unreasonably dangerous to the Baugh-mans; and the condition caused the Baughmans’ damages.
¶ 16. The record reflects that the Baughmans complained of numerous problems with the home. The Fire Marshal’s investigation revealed three issues with the home, including that the carpet was not seamed throughout the home, the air conditioner did not work properly, and the ceiling along the marriage line was not properly joined. Nonetheless, neither the *903 air-conditioner issue nor the marriage-line issue was due to a manufacturing defect. Pursuant to the retailership agreement between Cavalier and Albright, Albright was responsible for selecting and installing an air conditioner for the home and for marrying the two sides of the home together during setup. Cavalier’s representative reiterated at trial that each of the problems addressed by the Fire Marshal was attributable to Albright, not Cavalier.
¶ 17. The record shows only one other complaint from the Baughmans that could have been the result of faulty manufacturing. The evidence supports that there was a defect in one electrical wire, which was installed on the outside of a stud, instead of through it. However, even if the misplacement of a single electrical wire could be considered a material defect, there was no evidence presented at trial that the misplaced wire rendered the entire home unreasonably dangerous to the Baugh-mans. While the evidence shows the misplaced wire may have prevented the hallway lights in the home from functioning, such a condition was not shown to be dangerous to the Baughmans in any way. Most notably, because the Baughmans never technically lived in or owned the home, any damage claimed by the Baugh-mans from the misplaced wire is irrelevant. The Baughmans could not have suffered damage from the lack of use of the hallway lights in the home. Since the Baughmans failed to satisfy the requirements for proving their products-liability claim, the verdict against Cavalier must have been predicated on the breach-of-contract claim.
¶ 18. Although the Baughmans assert that Cavalier breached the contract to purchase the home, the record reflects that Cavalier was not a party to the contract to purchase the home. The contract in question is labeled as “ALBRIGHT MANUFACTURED HOMES, INC.... Purchase Agreement” at the top of the page. The contract further states:
IN THIS CONTRACT THE WORDS ME AND MY REFER TO THE PURCHASER AND CO-PURCHASER SIGNING THIS CONTRACT. THE WORDS YOU AND YOUR REFER TO THE RETAILER. SUBJECT TO THE TERMS AND CONDITIONS ON BOTH SIDES OF THIS AGREEMENT!;,] YOU AGREE TO SELL AND I AGREE TO PURCHASE THE FOLLOWING DESCRIBED UNIT.
¶ 19. The Baughmans claim Al-bright had apparent authority to act for and bind Cavalier. According to them, they believed Albright was Cavalier’s agent, which was the basis for their alternative claim for breach of contract under a theory of agency. It is undisputed that the only binding documentation between Cavalier and Albright was a retailership agreement. Albright was not Cavalier’s agent and never had been Cavalier’s agent.
¶ 20. In order to support their claim of agency, the Baughmans must show that Albright exhibited apparent authority for Cavalier through proof of “(1) acts or conduct of the principal indicating the agent’s authority, (2) reasonable reliance upon those acts by a third person, and (3) a detrimental change in position by the third person as a result of that reliance.” Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc., 928 So.2d 856, 865 (¶ 34) (Miss.2006) (citations omitted). Furthermore, “[t]here can be no apparent authority to act where an agency relationship, either actual, expressed, or implied does not exist.” Id. (citation omitted).
¶ 21. Here, the only evidence the Baughmans can provide to support their belief that Albright was Cavalier’s agent is a white banner in Albright’s office with Cavalier’s logo on it, reading “Authorized *904 Dealer.” However, Cavalier testified that the banner was not manufactured, distributed, approved, or known to exist by Cavalier.
¶ 22. Additionally, the Baughmans assert that because Cavalier visited the home after delivery and setup on numerous occasions to make repairs, they believed Albright and Cavalier were working together in an agency relationship to fix the home’s problems. However, even if Cavalier’s actions in helping to resolve the home’s problems indicated a working relationship with Albright, such actions arose after the Baughmans had already entered into the purchase agreement to buy the home. As such, they could not argue they relied on those actions when entering into the contract with Albright.
¶ 23. In sum, the Baughmans failed to provide sufficient evidence that reasonable jurors could not have found in favor of Cavalier. The Baughmans simply did not substantiate a basis for either a products-liability claim or a breach-of-contract claim against Cavalier. Finding this to be dis-positive of all other claims for relief, we reverse and render the circuit court’s judgment of $140,000 against Cavalier. However, because Albright was not a party to this action, this opinion does not affect the $40,000 judgment against Albright.
¶ 24. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IN THE AMOUNT OF $140,000 AGAINST CAVALIER HOME BUILDERS IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
LEE, C.J, GRIFFIS, P.J., BARNES, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., AND ROBERTS, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.